907 So.2d 357 (2005)
Bill HAMMONS, Appellant,
v.
FLEETWOOD HOMES OF MISSISSIPPI, INC., Fleetwood Retail Corporation, Bobbie Carol Black Lang, and John Phillips, Appellees.
No. 2003-CA-01775-COA.
Court of Appeals of Mississippi.
November 30, 2004.
Rehearing Denied April 19, 2005.
Certiorari Denied July 21, 2005.
*358 Dana J. Swan, Clarksdale, attorney for appellant.
Amy C. Felder, Kenneth E. Milam, Walter James Brand, Jackson, attorneys for appellees.
Before BRIDGES, P.J., CHANDLER and GRIFFIS, JJ.
BRIDGES, P.J., for the Court.
¶ 1. On January 22, 2001, William "Bill" Hammons, Jr., filed a claim in the Circuit Court of Holmes County against Fleetwood Homes of Mississippi, Inc., Fleetwood Retail Corporation, Bobbie Carol Black Lang, and John Phillips (collectively, "Appellees") alleging wrongful termination and malicious interference with his employment contract. The Appellees removed the case to the United States District Court for the Southern District of Mississippi, Jackson Division; however, the case was later remanded to state court. The Appellees subsequently filed and prevailed on a motion to transfer venue to Grenada County, arguing that venue in Holmes County was improper. The Appellees then filed a motion for summary judgment that was granted by the Circuit Court of Grenada County on July 17, 2003. Aggrieved by the decision, Hammons has appealed to this Court claiming that summary judgment was improperly granted for the Appellees.

FACTS
¶ 2. In December of 1998, Bill Hammons began working in Grenada, Mississippi, for Patrick Home Centers, Inc., which was subsequently acquired by Fleetwood Retail Corporation in January of 1999. Fleetwood Retail sells premanufactured, or mobile, homes, and Hammons's duties as a "housing consultant" included selling and promoting the homes offered for sale by Fleetwood Retail. The vast majority of homes sold by Fleetwood Retail came from their facilities in Lexington, Mississippi. Hammons was supervised by the general manager, Bobbie Carol Black Lang, and she, in turn, was supervised by the district manager, John Phillips.
*359 ¶ 3. On September 3, 1999, Hammons assisted Chris and Christina Farmer, as the acting sales agent, in their decision to purchase a home under Fleetwood Retail's promotional event referred to as the "Home Plus Package," providing them with a number of options regarding the appliances to be installed in the home. The Farmers took advantage of the promotion and elected to upgrade from the home's nineteen cubic foot refrigerator and buy a twenty cubic foot side-by-side refrigerator.
¶ 4. After a home order is submitted, Fleetwood Retail conducts a customer credit check. Upon approval, an orientation session is held with the customer, during which the order is reviewed to ensure its accuracy. Hammons and Karma Dubarb held such session with the Farmers, and the Farmers again indicated their desire to purchase the refrigerator upgrade. The original nineteen cubic foot refrigerator was accordingly deleted from the purchase order. The customary practice when an appliance was deleted from a home was to have it sent to Fleetwood Retail's service department in Grenada. The service department then would either reinstall the appliance in another home or sell it on the open market.
¶ 5. Concerned with what to do with the original refrigerator, Lang contacted the Lexington plant and talked with Kelly Adams, a sales representative, and John Tuyo, a sales manager. Lang asked whether the Farmer's purchase invoice for the upgraded refrigerator would be credited to the Grenada sales center, and Adams replied that the Farmers could not be issued a credit for the original refrigerator because they had already received such a large discount under the sales promotion. In the course of the conversation, Lang told Adams, in order to avoid the cost of sending a service man to Lexington to pick up the extra refrigerator and return it to Grenada's service department, that anyone there in Lexington could purchase the refrigerator for $200 plus tax, with the proceeds going to the Grenada sales center account.
¶ 6. As a result of the Farmers not being issued a credit for the original refrigerator, Lang had to inform Hammons that he would not be receiving a refrigerator credit of $185 on his commission. Hammons then contacted the Farmers and informed them that they would be receiving two refrigerators, so Lang called Adams and told him to also ship the original refrigerator to the Farmers. The Farmers accordingly received both refrigerators.
¶ 7. Fleetwood Retail maintained a company policy requiring housing consultants to notify customers that insurance could be purchased through them. Hammons was suspected of violating such policies and procedures by soliciting quotes from outside insurers for his customers. On June 2, 2000, Lang conducted a meeting, at which Hammons was present, for the purpose of, among other things, reminding everyone of the company's aforementioned policy. On June 10, while holding a sales orientation for Gary Little, a customer of Hammons, Lang learned that Hammons failed to offer Little insurance through Fleetwood Retail's agent in violation of the company policy. As a result, Lang believed that Hammons should be discharged, but being in the process of leaving the company, she deferred the decision to Phillips. Phillips was in agreement with Lang, and Hammons's employment was terminated on June 12, 2000. Hammons then filed his complaint on January 22, 2001, alleging wrongful termination and malicious interference with his employment contract.

*360 LAW AND ANALYSIS
¶ 8. Appellate courts employ a de novo standard when reviewing the grant or denial of summary judgment by a lower court and examine all evidentiary matters before them in the light most favorable to the non-moving party, giving it the benefit of any doubt. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 19) (Miss.2002). If, in this view, there is no genuine issue as to a material fact, and the moving party is entitled to a judgment as a matter of law, summary judgment should accordingly be entered in favor of the movant. Id.

I.

WRONGFUL TERMINATION
¶ 9. Hammons maintains that the actual reason Fleetwood Retail terminated his employment was because he reported an illegal scheme involving the sale of homes with refrigerators included in the purchase price. As described by Hammons, housing consultants would receive a kickback for persuading customers to opt for a larger refrigerator at an additional cost, thereby paying for two refrigerators but receiving only one. The original refrigerator would then be shipped from Lexington to Grenada where Lang or other employees would arrange for it be diverted for their personal use or that of family and friends. Hammons claims that, as a result of Lang's efforts to enlist him in this illegal scheme, he reported the incident to Phillips, but Phillips defended Lang chastising him. Hammons further claims that, from that day forward, Lang directed her animus at him and that her long campaign of retaliatory harassment, lasting almost a year, culminated in his discharge. We find Hammons's argument unconvincing.
¶ 10. Hammons's employment with Fleetwood Retail falls under the employment at-will doctrine, and Mississippi clearly follows the common law rule that employment contracts drafted with indefinite terms regarding duration may be terminated at the will of either party. Butler v. Smith, 35 Miss. 457, 464 (1858). "The employee can quit at will; the employer can terminate at will. This means either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." Kelly v. Miss. Valley Gas Co., 397 So.2d 874, 874-75 (Miss.1981). However, the Mississippi Supreme Court has carved out a narrow public policy exception to the doctrine. The court has held that "an employee who refuses to participate in an illegal act" or "an employee who is discharged for reporting illegal acts of his employer" may bring an action in tort against the employer. McArn v. Allied Bruce-Terminix Co., Inc., 626 So.2d 603, 607 (Miss.1993).
¶ 11. A prerequisite for Hammons's claimed wrongful discharge to be actionable is that it fall under the exception enunciated in McArn. Applicability of the exception does not require that a crime has already been committed, See Paracelsus Health Care Corp. v. Willard, 754 So.2d 437, 443(¶ 23) (Miss.1999), but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties. See Howell v. Operations Mgmt. Intern., Inc., 161 F.Supp.2d 713, 719 (N.D.Miss. 2001) (citation omitted). In claiming that he was discharged for reporting an illegal scheme, i.e., Fleetwood Retail's attempt to withhold the nineteen cubic foot refrigerator, Hammons failed to identify an illegality.
¶ 12. The parties to a commercial transaction, such as that entered by the Farmers and Fleetwood Retail, negotiate the terms of a sales contract. If either party *361 is dissatisfied with the terms of the contract, so as to not reach an agreement, they are not required to enter the contract. For failing to comply with the terms of a contract once entered, however, the parties can pursue civil remedies. In the case at bar, the Farmers requested two refrigerators, so they received two refrigerators. Had they not received both, a number of contractual remedies were at their disposal. Fleetwood Retail's failure to credit the Farmers for the original refrigerator after they opted for the upgrade does not constitute an illegal act, so Hammons could not possibly have reported an illegal scheme. As a result, no issue was required for determination by a jury. Therefore, summary judgment as to Hammons's wrongful discharge claim was properly granted.

II.

MALICIOUS INTERFERENCE WITH EMPLOYMENT CONTRACT
¶ 13. Hammons maintains that after reporting the alleged illegal scheme, Phillips did nothing to remedy the situation, and left Lang as his general manager. As a result, Lang retaliated by constantly tormenting, criticizing, and degrading him while conducting malicious and unfair performance evaluations, which ended with his termination. As a result, he alleges that Phillips and Lang are liable to him for tortiously interfering with his employment contract with Fleetwood Retail.
¶ 14. The Mississippi Supreme Court has declared that this claim requires proving that the acts (1) were intentional and willful; (2) were calculated to cause damage to the plaintiff engaged in a lawful business; (3) were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss. Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 48(¶ 8) (Miss.1998). An individual occupying a position of trust on behalf of another is privileged, within the scope of that responsibility and in the absence of bad faith, to interfere with his principal's contractual relationship with a third person. Shaw v. Burchfield, 481 So.2d 247, 255 (Miss.1985) (citation omitted).
¶ 15. The actions of Phillips and Lang that ultimately resulted in Hammons's discharge were privileged because they held positions of trust with Fleetwood Retail and acted in accordance with their responsibilities over Hammons as his supervisors. Liability, therefore, could only arise from acting in bad faith.
¶ 16. Both Phillips and Lang provided affidavits averring that Hammons's employment was terminated because he failed to notify customers of insurance offered through Fleetwood Retail in violation of company policy. Hammons has offered no proof to the contrary. Since Phillips and Lang were in privileged positions and the record contains absolutely no evidence of bad faith, Hammons's claim of malicious interference with his employment contract is unfounded. Accordingly, summary judgment was properly granted by the circuit court.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, P.J., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ. CONCUR. KING, C.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. IRVING, J., NOT PARTICIPATING.