United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 26, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 04-60844
Summary Calendar

_____

ARLIES KING

       Plaintiff - Appellant

  v.

NEWTON COUNTY BOARD OF SUPERVISORS; HARRIS KENNETH, individually
and in his official capacity as president of Newton County Board
of Supervisors; MILTON SMITH, individually and in his official
capacity as supervisor of Newton County; L M BONDS, individually
and in his official capacity as supervisor of Newton County;
JIMMY JOHNSON, individually and in his official capacity as
supervisor of Newton County; JAMES SMITH, individually and in his
official capacity as supervisor of Newton County; GEORGE HAYES,
individually and in his official capacity as Chancery Clerk of
Newton County; ZARAH RICKETTS; JOHN DOES

       Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Mississippi, Jackson
No. 4:02-CV-499-LN

_____

Before KING, Chief Judge, and DAVIS and STEWART, Circuit Judges.

PER CURIAM:[*]

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Plaintiff-Appellant Arlies King was forced to resign from her position as Justice Court Clerk in Newton County, Mississippi. She brought suit against her employer, the Newton County Board of Supervisors, alleging several causes of action under federal and state law. The district court granted summary judgment in favor of Newton County. We AFFIRM.

## I. BACKGROUND

### A. Factual Background

Arlies King was appointed to the position of Justice Court Clerk for Newton County in June 2000. When King assumed her new position, she discovered checks that had been tendered to the Clerk's office for payment of traffic fines but had not been deposited in the County's bank account. King also determined that a vast quantity of traffic citations had not been logged into the Clerk's computer system. King notified Defendant-Appellee George Hayes, Newton County Chancery Clerk, of her findings, and Hayes responded by calling the State Auditor. The State Auditor initiated an investigation. The Newton County Board of Supervisors (the "Board") instructed King to commence the process of entering the backlog of citations into the computer system.

In November 2001, King contacted Defendant-Appellee Zarah Ricketts in regard to an overpayment of garnishment funds made to

- 2 -

Rickets, which was made by King's predecessor. King requested that Ricketts pay the money back. King alleges that Ricketts then had a meeting with Justice Court Judge Jan Addy and made disparaging remarks about King.

On January 7, 2002, the Board followed its traditional practice of rehiring all county employees, including King, for the new year. Around that same time, the Board became increasingly unsatisfied with King's lack of progress toward rectifying the citation backlog. In addition, given the incident involving Ricketts, the Board determined that King had been rude and unfriendly to clients. The Board therefore determined that King would be terminated. On January 11, 2002, the Board gave King the opportunity to resign, which she accepted. On January 15, 2002, King attempted to withdraw her resignation, but the Board refused to allow her to do so and on January 21, 2002, voted to accept her resignation.

## B. Procedural Background

On December 6, 2002, King filed suit against the members of the Board, Hayes, and Ricketts (collectively, the "Defendants"), asserting various claims under federal and state law. King alleged that the Board: (1) breached her employment contract by effectively terminating her when the Board forced her to resign; (2) violated 42 U.S.C. § 1983 by depriving her of a property

interest, i.e., her employment, without substantive and procedural due process; (3) conspired to deprive her of a property interest; (4) committed the tort of intentional infliction of emotional distress; and (5) discharged her in retaliation for whistleblowing.

On August 12, 2004, the district court granted summary judgment in favor of the Defendants with respect to all five counts. The court determined that King could not maintain a breach of contract claim because she was an at-will employee. Similarly, the court held that King could not maintain her § 1983 or conspiracy claims because, as an at-will employee, King did not have a property interest in her continued employment. The court also concluded that King could not prevail on her intentional infliction of emotional distress claim because the actions by the Defendants could not be considered extreme or outrageous. Finally, the court determined that King could not prevail on her whistleblowing claim because as an at-will employee, she could be fired for any reason. The court also held that this case did not fall into the exception that prohibits at-will employees from being fired for reporting illegal activities because there was no illegal activity in King's case. On September 13, 2004, King timely filed the instant appeal.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, applying the same legal standards as the district court. Fierros v. Tex. Dep't of Health, 274 F.3d 187, 190 (5th Cir. 2001).  Summary judgment is appropriate if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The initial burden to demonstrate the absence of a genuine issue of material fact is on the movant. Celotex, 477 U.S. at 324.  Upon the movant's meeting this initial burden, the burden shifts to the non-movant to establish that there is a genuine issue of material fact in dispute.  Id.

## III.  ANALYSIS

### A.  Breach of Contract

King argues that the district court erred in finding that she did not have a valid and enforceable employment contract. King contends that under Nuwer v. Mariner Post-Acute Network, 332 F.3d 310 (5th Cir. 2003), the Board's act of rehiring her, coupled with various employment documents, created an implied employment contract.  We disagree with King's argument.

The Mississippi Supreme Court has declared that "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for . . . no

- 5 -

reason at all . . . ." <u>McArn v. Allied Bruce-Terminix Co.</u>, 626 So.2d 603, 606 (Miss. 1993)(quoting <u>Shaw v. Burchfield</u>, 481 So.2d 247, 253-54 (Miss. 1985)); <u>see also</u> <u>HeartSouth, PLLC v. Boyd</u>, 865 So.2d 1095, 1108 (Miss. 2003). Newton County's employment manual states:

> It is the County's policy that all employees who do not have a written employment contract with the County for a specific fixed term of employment are employed at the County's will and are subject to termination at any time . . . . [T]he County's policies and practices with respect to any matter are not to be considered as creating any contractual obligation on the County's part . . . .

Thus, it is clear that the Board could not have changed King's at-will status by acting at a Board meeting, even if it had explicitly stated that it wished to change the terms of King's employment. Further, the minutes of the January 7 meeting do nothing to reflect that the Board intended to change King's status. The meeting minutes state: "Motion by Kenneth Harris, seconded by Jimmy Johnson to re-hire all County Employees for the 2002 year. Motion carried unanimously." In short, there is no evidence whatsoever to indicate that the Board's actions on January 7 abrogated King's at-will status. Because she was an

at-will employee at the time of her termination,[1] she is precluded from contesting her termination on a breach-of-contract theory. We thus affirm the district court's judgment as to King's first count.

**B.   Deprivation of Property Interest in Violation of 42 U.S.C. § 1983**

King also argues that the Board violated her due process rights in voting to accept her resignation. King points to the fact that the Board voted on her resignation by telephone, as opposed to in person, and asserts that such a vote, combined with the knowledge of her rescinding her resignation, was not sufficient to accept her resignation and only evinces a premeditated plan to terminate her. She argues that this violation of due process violates her Fourteenth Amendment rights because she had a property interest in her continued employment. She seeks to vindicate this violation through 42 U.S.C. § 1983.

In <u>Johnson v. Southwest Mississippi Regional Medical Center</u>, 878 F.2d 856, 858 (5th Cir. 1989), we held that a public employee has a property interest in her continued employment if she can prove a claim of entitlement to such a property interest by reference to a: (1) statute; (2) written contract; or (3)

---

[1]   We assume, arguendo, that King's resignation was equivalent to being terminated.

mutually explicit understanding enforceable as an implied contract. King seems to argue that the third option--an implied contract--established a property interest in her employment. However, as discussed above, Newton County's employment manual precludes any claim of a mutual understanding that King was not an at-will employee. Because King had no property interest in her employment, her § 1983 claim fails.

## C. Conspiracy to Deprive a Property Interest

With respect to her conspiracy claim against Ricketts, King asserts that Ricketts did not file for summary judgment and that Ricketts's "Affidavit of Joinder" is not sufficient for disposing of the claims against Ricketts on summary judgment. Further, King asserts that Ricketts provided no proof refuting the allegations that she engaged in a conspiracy to have King terminated. As for the other conspiracy defendants, King asserts that there were genuine issues of material fact that precluded summary judgment.

We need not consider the issue of whether Ricketts was properly joined because the overall conspiracy allegation cannot be sustained. Under Mississippi law, a conspiracy is defined as "a combination of persons for the purpose of accomplishing an unlawful purpose or a lawful purpose unlawfully." Delta Chem. & Petroleum, Inc. v. Citizens Bank of Byhalia, Miss., 790 So.2d

862, 877 (Miss. 2001) (quoting <u>Levens v. Campbell</u>, 733 So.2d 753, 761 (Miss. 1999)).  "It is elementary that a conspiracy requires an agreement between the co-conspirators."  <u>Gallagher Bassett Servs., Inc. v. Jeffcoat</u>, 887 So.2d 777, 786 (Miss. 2004).  King points to no evidence raising a genuine issue as to the existence of an agreement to commit an illegal act that would form the basis of the alleged conspiracy.  Further, as discussed above, King had no property interest in her continued employment.  The defendants cannot be liable for conspiring to deprive King of something that she never possessed and that never existed.

**D.  Intentional Infliction of Emotional Distress**

With respect to her intentional infliction of emotional distress claim, King argues that the Board's threat to fire her caused her distress that was so severe that it caused her to seek medical attention.  According to King, the degree of her distress created a factual issue as to whether the Board's actions were sufficiently egregious.  Under Mississippi law, to create liability for intentional infliction of emotional distress, the complained-of conduct "must have been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  <u>Brown v. Inter-City Fed. Bank for Sav.</u>, 738 So.2d 262, 265 (Miss. Ct. App. 1999) (internal

quotation marks omitted).  King has pointed to no evidence in the record that raises a genuine issue as to whether the Defendants ever engaged in such egregious behavior.  Accordingly, the district court properly dismissed King's intentional infliction of emotional distress claim.

**E.    Retaliatory Discharge/Whistleblowing**

Finally, as to her whistleblowing claim, King contends that the amount of money that was implicated in the investigation, i.e., $1 million, and the fact the investigation was closed a year after she was terminated, show that she was terminated for whistleblowing.  King acknowledges that terminated at-will employees typically cannot sue their former employer regarding their dismissal.  However, she points to a "whistleblower" exception to this principle.  In McArn, 626 So.2d at 607, and Willard v. Paracelsus Health Care Corp., 681 So.2d 539, 542 (Miss. 1996), the Mississippi Supreme Court established a narrow public policy exception to the employment at will doctrine when an employee is terminated for: (1) refusing to participate in an illegal act; or (2) reporting her employer's illegal acts to her employer or third parties.  King alleges that her termination falls into the second exception, arguing that the mismanagement of almost $1 million constitutes such an extreme dereliction of duty as to be illegal.  We disagree.  King cites to no authority

explaining how the mismanagement she discovered qualifies as a criminal violation. Indeed, the State Auditor brought no criminal charges, and King acknowledges as much. Without any reason to believe that King reported illegal activity, we cannot find that her termination qualifies under McArn's whisteblower exception. Thus, we affirm the district court's judgment as to her whistleblower claim.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.