# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2011

No. 10-60571

Lyle W. Cayce
Clerk

GERALD LEE KYLE,

Plaintiff - Appellant

v.

CIRCUS CIRCUS MISSISSIPPI, INCORPORATED, doing business as Gold
Strike Casino Resort,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:09-CV-14

Before DAVIS, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

Gerald Lee Kyle, a former employee of Circus Circus Mississippi, Inc.,
doing business as Gold Strike Casino Resort ("Gold Strike"), brought a claim
alleging that Gold Strike terminated his employment in retaliation for reporting
allegedly criminal activity. The district court granted summary judgment in
favor of Gold Strike. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

10-60571

**FACTS AND PROCEEDINGS**

Kyle was the poker room manager at the Gold Strike Casino in Tunica, Mississippi. Gold Strike hosts two large poker tournaments, the Poker Classic and the World Poker Open. At these tournaments, player tips are collectively pooled and then divided into shares for distribution to casino personnel. At Gold Strike, Johnny Grooms, the tournament director, and Ken Lambert, Gold Strike's director of poker operations for the Mississippi region and Kyle's supervisor, were responsible for the division and distribution of shares. After the June 2006 Poker Classic, Kyle alleges he was promised ten shares of the tip pool but only received nine shares. After the January 2007 World Poker Open, Kyle alleges that he was given seven shares of the tip pool after being promised eight shares. He spoke to Lambert and Grooms about the discrepancies. Lambert told Kyle that he had given Kyle and himself one less share so that lower-level employees could receive additional money. In March 2007, Kyle wrote a letter to Eric Wolfman, Gold Strike's Chief Financial Officer, and asked for an accounting of the tip shares. In the letter, Kyle also wrote, "I reported my 9 shares to the IRS this year, and I hope that everyone involved in June's Poker Classic did the same. . . . [t]he morning after this year's [World Poker Open], I received 7 shares which will be reported on my 2007 return."

Wolfman forwarded Kyle's letter to Rogena Barnes, a vice president of human resources. Barnes conducted an investigation into Kyle's concerns. During a meeting with Barnes, Kyle raised a concern that the casino was not paying payroll taxes on the tip pool distributions and showed Barnes a copy of a document he had printed off of the IRS's website entitled "Examples of General Tax Fraud Investigations." Among other cases, the document contained a two-

paragraph summary of the IRS's investigation and prosecution of the owner of a Las Vegas strip club who was convicted of conspiracy to commit tax fraud. In that case, the owner and his employees conspired to under report certain cash payments received by the employees. The conspiracy included the delivery of inaccurate records to the club's accountant, the preparation of inaccurate quarterly financial reports, tax returns, and W-2 forms, and the underreporting of the true amount of earnings received by the employees on quarterly federal employment tax returns to conceal the fraud. After a thorough investigation, Barnes provided Kyle with a memorandum detailing her findings. She concluded that she was unable to determine whether Kyle should have received an additional share of the tip pool. Barnes also acknowledged Kyle's concerns about the appropriate reporting of income and taxes to the IRS and stated that the casino was "in the process of developing policies and procedures that will be communicated to employees and implemented shortly to address the income reporting and tax issues." Barnes's investigation also revealed that several of Kyle's subordinates had made complaints about Kyle. Specifically, various employees claimed that Kyle did not "assist with problems," "does not do anything," "threatens the employees with discipline [and] is vindictive," and "makes [them] feel stupid."

Complaints about Kyle continued. In October 2007, approximately ten poker room employees requested a meeting before Lambert and Lissa Ross, Gold Strike's Employee Relations Manager, to discuss several grievances. The employees lodged eleven specific complaints against Kyle. The casino provided Kyle a written performance improvement plan; Kyle refused to sign it, disputing the issues. In November 2007, Kyle sent two nearly identical letters to the IRS

two weeks apart. The letters alleged that Gold Strike was not properly withholding and reporting tip money paid to tournament workers. Kyle referred to Gold Strike's "improper tax reporting procedures" as "illegal practices" in the letter and also stated his belief that his termination was imminent. He did not provide anyone at Gold Strike a copy of these letters. The IRS took no action in response.

In January 2008, during the World Poker Open, a compliance concern arose related to an inventory of playing cards. Kyle did not notify Lambert within fifteen minutes of discovering of the discrepancy as required by casino policy and Mississippi Gaming Regulations. He did notify Lambert the following day. The discrepancy ultimately was found to be the result of a shipping shortage. At Lambert's recommendation, Kyle was suspended pending further investigation. Kyle was fired approximately two weeks later for his failure to immediately notify his supervisor of the inventory discrepancy.

Kyle filed suit in federal court, claiming his termination was for retaliatory reasons and that Gold Strike's stated reasons for his discharge were wholly pretextual. Gold Strike filed a motion for summary judgment, which Kyle opposed. The district court granted Gold Strike's motion and entered final judgment. Kyle timely appealed.

## STANDARD OF REVIEW

"The grant or denial of a motion for summary judgment is reviewed *de novo.*" *Smith v. Am. Family Life Assur. Co. of Columbus*, 584 F.3d 212, 215 (5th Cir. 2009). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.

10-60571

FED. R. CIV. PRO. 56(a). We apply Mississippi law in this diversity action. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

## DISCUSSION

Kyle raises two alternative arguments. First, he argues that this court should certify two questions of law to the Mississippi Supreme Court to seek clarification on issues regarding the "public policy exception" to Mississippi's employment-at-will doctrine that was first announced in *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603 (Miss. 1993). In the alternative, Kyle argues that even in the absence of clarification, the district court erred in granting summary judgment on his claim of wrongful termination. We consider each argument *seriatim*.

## A.    The Employment-at-Will Doctrine and the *McArn* Exception

Mississippi is an employment-at-will state that follows the common law rule that one who is under a contract of employment for an indefinite term may quit or may be terminated at the will of the employer. "[E]ither the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874–75 (Miss. 1981). In *McArn*, the Mississippi Supreme Court carved out "a narrow public policy exception" to the employment-at-will doctrine. 626 So. 2d at 607. Regardless of whether a written contract governs an employment relationship, "(1) an employee who refuses to participate in an illegal act as in *Laws* [*v. Aetna Finance Co.*, 667 F. Supp. 342 (N.D. Miss. 1987)], shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred

5

by the employment at will doctrine from bringing action in tort for damages against his employer." *McArn*, 626 So. 2d at 607.

Kyle argues that this court should certify the following questions regarding the *McArn* exception to the Mississippi Supreme Court:

> (1) Whether a "good faith belief" that the activity reported was illegal qualifies for the public policy exception to the At Will Doctrine, and

> (2) Whether the activity reported must be "criminally" illegal to qualify for the *McArn* Exception to the At Will Doctrine.

In *Wheeler v. BL Development Corp.*, this court answered the very questions proposed by Kyle. 415 F.3d 399, 402–04 (5th Cir. 2005). The issue posed in *Wheeler* was "whether the exception to Mississippi's employment at will doctrine requires the conduct reported to actually be criminal in nature." *Id.* at 402. We held that the appellants' "attempt to equate an employee's 'good faith *effort*' in reporting illegal activity, which is protected under the common law exception, with a good faith *belief* that illegal activity is taking place is misplaced." *Id.* at 403 (emphasis in original). We additionally held that because the activity reported in *Wheeler* "did not constitute any form of criminally illegal activity . . . *McArn*'s 'narrow public policy exception' is not applicable in this instance." *Id.* at 404. *See also Howell v. Operations Mgmt. Int'l, Inc.*, 77 F. App'x 248, 252 (5th Cir. 2003) ("Our own court's prior cases involving the *McArn* exception have involved *criminal illegality*." (emphasis added)).

Kyle recognizes that this court has already answered the questions he poses, but "believes the Fifth Circuit has misconstrued Mississippi law." His subjective belief does not warrant the certification of questions to the Mississippi Supreme Court. We are a strict stare decisis court. *FDIC v. Abraham*, 137 F.3d

264, 268 (5th Cir. 1998). "One aspect of that doctrine to which we adhere without exception is the rule that one panel of this court cannot disregard, much less overrule, the decision of a prior panel." *Id*; *see also United States v. Taylor*, 933 F.2d 307, 313 (5th Cir. 1991) ("Taylor acknowledges these decisions. He urges their abrogation. That course of action is not open to this Court: it is the firm rule of this circuit that one panel may not overrule the decisions of another."). "Adherence to this rule is no less immutable when the matter determined by the prior panel is the interpretation of state law: Such interpretations are no less binding on subsequent panels than are prior interpretations of federal law." *Abraham*, 137 F.3d at 268.

In a diversity case, this court must, of course, "follow *subsequent* state court decisions that are *clearly contrary* to a previous decision of this court." *Farnham v. Bristow Helicopters, Inc.*, 776 F.2d 535, 537 (5th Cir. 1985) (emphasis added). As Kyle acknowledges, the Mississippi Supreme Court has not addressed the questions he proposes. He argues that *East Mississippi State Hospital v. Callens*, 892 So. 2d 800 (Miss. 2004), supports his belief that the Mississippi Supreme Court would reach a conclusion contrary to *Wheeler*. We disagree. In the first instance, *Callens* predates *Wheeler*; it is not a "subsequent state court decision." Second, although the court characterized one of Callens's assertions as alleging "that his firing was in retaliation for his reporting improper operations at East Mississippi State Hospital, thus making his termination actionable under Mississippi common law as an exception to the employee-at-will doctrine first recognized in *McArn*," 829 So. 2d at 804, and affirmed the trial court's verdict in favor of Callens on his retaliation claim, *Callens* contains no discussion of whether the "improper operations" reported

there were also criminally illegal. The only Mississippi case to squarely confront this question is *Hammons v. Fleetwood Homes of Mississippi, Inc.,* 907 So. 2d 357 (Miss. Ct. App. 2004). In *Hammons*, the Mississippi Court of Appeals required that the act reported by the appellant be criminal to fall under the *McArn* exception. *Id.* at 360 (holding the *McArn* exception "require[s] that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties."). *Hammons* is consistent with our decision in *Wheeler*.

"[W]hen a panel is considering a governing question of state law on which a prior panel has ruled, the subsequent panel's obligation to follow that ruling is not alleviated by intervening decisions of intermediate state appellate courts unless such 'subsequent state court decisions . . . are clearly contrary to a previous decision of this court.'" *Abraham,* 137 F.3d at 269 (alteration in original). There being no such "subsequent state court decisions," we are bound by *Wheeler* and decline to certify Kyle's proposed questions to the Mississippi Supreme Court

**B.      Whether the District Court Erred in Granting Summary Judgment to Gold Strike**

Kyle alternatively argues that even under this court's current interpretation of the *McArn* exception, the district court erred by granting summary judgment to Gold Strike. The district court held that Kyle's claims "fail[ed] as a matter of law since the plaintiff did not demonstrate with substantial evidence or citation to binding statutory and/or case law that the activities the plaintiff complained of to his employer 'warrant[ed] the imposition of criminal penalties, as opposed to mere civil penalties,'" which is required for

10-60571

a *McArn* claim. *Kyle v. Circus Circus Miss., Inc.*, No. 09-CV-104, 2010 WL 2539576, at *4 (N.D. Miss. June 15, 2010). We agree.

In *Wheeler*, we held that "the district court did not err when it determined that Appellants are precluded from recovering under the [*McArn*] exception because they have failed to come forth with evidence establishing that the [act reported] itself constituted criminal activity." 415 F.3d at 404. Kyle argues that the two acts that he reported constituted criminal activity and are therefore sufficient to invoke the *McArn* exception: (1) his receipt of one less share of the tip distribution pool than he was promised, which he alleges constitutes larceny; and (2) Gold Strike's failure to adhere to pay payroll taxes on the cash tips it distributed to its employees, which he alleges constitutes criminal tax evasion.

In *King v. Newton County Board of Supervisors*, a court clerk discovered that checks that had been tendered to the Clerk's office for payment of traffic fines had not been deposited into the County's bank account and that a large quantity of traffic citations had not been entered into the Clerk's computer system. 144 F. App'x 381, 382 (5th Cir. 2005). The clerk notified her supervisor, who contacted the State Auditor to initiate an investigation. *Id*. After the County Board of Supervisors became dissatisfied with King's work, she was forced to resign. *Id*. at 383. King sued, alleging, *inter alia*, that she had been discharged in retaliation[1] for reporting the aforementioned discrepancies. *Id*. The district court granted summary judgment in favor of defendants, and we affirmed. *Id*. at 386. As to her whistleblowing claim, we held that "King cites to no authority explaining how the mismanagement she discovered qualifies as a criminal

---

[1] We assumed, *arguendo*, that King's forced resignation was equivalent to being terminated. *King,* 144 F. App'x at 384.

9

violation. Indeed, the State Auditor brought no criminal charges, and King acknowledges as much." *Id*.

To invoke the *McArn* exception, Kyle must demonstrate that the activities that he complained of constituted either criminal activity or a directive that he engage in criminal activity. Kyle presented no evidence on this point to the district court. The undisputed evidence before the district court showed that the casino had delegated to Lambert and Grooms discretion to allocate and distribute the tip pool money. Kyle presented no argument and offered no authority to support his belief that the discretionary distribution of tip pool money constituted larceny.[2]

Kyle's allegation that he complained to his employer of criminal tax evasion is based on his "(1) making passing reference in his March 2007 letter to CFO Wolfman that he, the plaintiff, had reported his tip income and that he hoped other employees had as well; (2) bringing a case printed from the IRS website regarding a strip club found criminally liable for failing to report tips to Rogena Barnes, the VP of Human Resources; and (3) writing a letter to the IRS in November 2007 alleging the casino had not reported the tip pool income." *Kyle*, 2010 WL 2539576, at *4. None of these actions establish that the conduct he reported constitutes a criminal offense.

The elements of criminal tax evasion are (1) willfulness; (2) the existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax. *See Sansone v. United States*, 380 U.S. 343, 351

---

[2] Kyle has also arguably waived his argument that the conduct he complained of constituted larceny by failing to adequately brief it in his initial brief on appeal. *E.g., Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").

10-60571

(1965); *see also United States v. Nolen,* 472 F.3d 362, 376 (5th Cir. 2006). Kyle "cites no authority explaining how the [tax deficiency he allegedly] discovered qualifies as a criminal violation." *King*, 144 F. App'x at 386. He argues that "[e]veryone knows that failure to pay your taxes is illegal, and you can go to jail for not doing so." This misses the point. *Wheeler* requires that a reported act be *criminally illegal* in order to invoke the *McArn* exception. To be *criminally illegal*, a tax deficiency must be the result of willful behavior. "Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he *voluntarily and intentionally violated* that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991) (emphasis added). Kyle has made no allegation or demonstration that Gold Strike's alleged failure to withhold payroll taxes from the tip pool was the result of a voluntary and intentional violation of its duty to do so. Additionally, as in *King*, the administrative body responsible for investigating criminal charges declined to pursue Kyle's allegations. 144 F. App'x at 386. "In sum, the district court did not err when it determined that [Kyle is] precluded from recovering under the public policy exception because [he has] failed to come forth with evidence establishing that the [acts he reported] constituted criminal activity." *Wheeler,* 415 F.3d at 404.

## CONCLUSION

The judgment of the district court is AFFIRMED.

11