# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 4, 2014

No. 12-60568

Lyle W. Cayce
Clerk

SANDI HATHCOTE VAUGHAN,

Plaintiff-Appellant

v.

CARLOCK NISSAN OF TUPELO, INCORPORATED; CORBETT HILL,

Defendants-Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before DeMOSS, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:[*]

Sandi Vaughan ("Vaughan") argues that after she reported allegedly illegal activity at Carlock Nissan of Tupelo ("Carlock"), the car dealership where Vaughan worked, she was terminated in violation of the illegal-acts exception to Mississippi's at-will employment doctrine. She further argues that Corbett Hill ("Hill"), a supervisor at Carlock, tortiously interfered with her employment at the dealership. She appeals the district court's grant of summary judgment

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60568

in favor of both Carlock and Hill.  For the reasons that follow, we AFFIRM in part and REVERSE and REMAND in part.

## BACKGROUND

Vaughan was employed by Carlock to assist salespersons with contacting potential customers.  On April 2, 2009, Vaughan contacted Nissan USA ("Nissan"), Carlock's corporate parent, to report concerns she had about certain practices at the dealership.  Using a pseudonym, Vaughan reported that Carlock had: (1) employed a "clean sweep" program under which customers could pay between $400 and $800 to purchase a car with a sponsor and "repair" their credit within four to six months even though the customer's credit was never repaired in the four-to-six-month time frame and the sponsor remained liable for the car loan; (2) advertised and sold one car as having an air conditioner when it did not; (3) changed certain financial documents to include additional charges to which the customers had not agreed, including "gap insurance" and extended warranties, and altered interest rates; and (4) advertised large prize giveaways that Carlock either never awarded or awarded only as "small" prizes with little to no monetary value.

Following Vaughan's report, seven Carlock employees were fired.  On June 11, 2009, Vaughan contacted Nissan again to complain that Hill knew of the complained-of activities but had not been fired.  On June 15, 2009, Hill learned of Vaughan's complaints and fired Vaughan.  The parties do not dispute that Vaughan's reporting of Carlock's practices to Nissan factored into Hill's decision to terminate her.

Vaughan brought suit against Carlock and Hill, claiming that she was unlawfully terminated under Mississippi's illegal-acts exception to its at-will employment doctrine and asserting tortious interference with employment.  Carlock and Hill moved for summary judgment.  The district granted summary judgment for the defendants,  observing that, to satisfy the illegal-acts exception,

No. 12-60568

Vaughan was required to prove that that conduct she reported was in fact illegal. The court determined that Vaughan had failed to properly support her assertions that Carlock's and Hill's alleged acts and omissions constituted actual illegal conduct under the illegal-acts exception or that Hill fired her in bad faith. Vaughan timely appealed.

## STANDARD OF REVIEW

We review the grant or denial of a motion for summary *de novo. Smith v. Am. Family Life Assur. Co. of Columbus*, 584 F.3d 212, 215 (5th Cir. 2009). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "[A] party seeking summary judgment . . . bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to "the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *see* FED. R. CIV. P. 56(c)(1). "If a party fails to properly support an assertion of fact . . . as required by Rule 56(c), the court may[] . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Thus, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

No. 12-60568

## DISCUSSION

### I.

Because this is a diversity suit, we apply state substantive law, in this case, the law of Mississippi. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999). Mississippi is an at-will employment state, meaning that an employee may generally be terminated with or without justification. *See Buchanan v. Ameristar Casino Vicksburg, Inc.*, 852 So. 2d 25, 26 (Miss. 2003). In *McArn v. Allied Bruce-Terminix Co.*, however, the Mississippi Supreme Court created an exception to this rule based on public policy, which became known as the illegal-acts exception and which provides that an employee may recover damages for wrongful termination when he or she (1) refuses to participate in an illegal act or (2) reports an illegal act, and this forms the basis for termination. 626 So. 2d 603, 607 (Miss. 1993).

"Applicability of the exception does not require that a crime has already been committed but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." *Hammons v. Fleetwood Homes of Miss., Inc.*, 907 So. 2d 357, 360 (Miss. App. 2004) (citation omitted) (citing *Howell v. Operations Mgmt. Int'l, Inc.*, 161 F. Supp. 2d 713, 719 (N.D. Miss. 2001); *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 443 (Miss. 1999)). However, Mississippi law provides that, to succeed under the illegal-act exception, a terminated employee must have reported conduct that is actually illegal. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401 (5th Cir. 2005). A terminated employee's "attempt to equate an employee's 'good faith *effort*' in reporting illegal activity, which is protected under the common law exception, with a good faith *belief* that illegal activity is taking place is misplaced." *Id.* In other words, "[a] plaintiff's subjective belief that the acts reported were illegal does not satisfy *McArn*; instead, the alleged act must actually be illegal."

No. 12-60568

*McGrath v. Empire Inv. Holdings, LLC*, No. 1:11-CV-209-A-S, 2013 WL 85205, at *4 (N.D. Miss. Jan. 7, 2013) (citing *Wheeler*, 415 F.3d at 403).

Carlock argued before the district court that there was no genuine issue of material fact that the conduct Vaughan reported was not in fact illegal under Mississippi law. Therefore, in the context of summary judgment, Vaughan was required to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial,'" *Celotex*, 477 U.S. at 324, and establish that the activities she reported were actually illegal.

Vaughan argues that she reported conduct that was actually illegal and thus that she was protected from termination under *McArn*. Specifically, Vaughan asserts that Carlock violated Mississippi law prohibiting (1) larceny, (2) uttering a forgery, (3) fraud by mail, and (4) false pretense. In the absence of adverse countervailing evidence in the record, Vaughan's belief that the activities were criminal and her mere conclusory assertions that the activities were actually illegal, however, does not satisfy *McArn*'s standard. Accordingly, and as discussed more fully below, we affirm the district court's grant of summary judgment on these claims.

## A.

Mississippi's grand larceny statute states that "[e]very person who shall be convicted of taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more, shall be guilty of grand larceny." MISS. CODE ANN. § 97-17-41. Mississippi's petit larceny statute is violated when property valued under $500 has been stolen. *Id.* § 97-17-43.

Vaughan's opening brief states only that "[s]tealing is illegal under Mississippi law." She does not identify what property was stolen or that it was done with the requisite intent. More fundamentally, she failed to make this

No. 12-60568

argument below.   Before the district court, Vaughan did not cite either Mississippi's grand larceny statute or the state's petit larceny statute.   Nor did she discuss any authority applying either statute to explain how the conduct she reported was in fact a violation of Mississippi law.   "Arguments not raised in the district court cannot be asserted for the first time on appeal."   *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 669 (5th Cir. 2004).   Accordingly, we decline to address Vaughan's assertion that she reported larceny.

**B.**

Mississippi's prohibition on uttering a forgery is embodied in section 97-21-59 of the Mississippi code, which provides:

> Every person who shall be convicted of having uttered or published as true, and with intent to defraud, any forged, altered, or counterfeit instrument, or any counterfeit gold or silver coin, the forgery, altering, or counterfeiting of which is declared by the provisions of this chapter to be an offense, knowing such instrument or coin to be forged, altered, or counterfeited, shall suffer the punishment herein provided for forgery.

MISS. CODE ANN. § 97-21-59.   In context of this appeal, Carlock employees committed the crime of uttering a forgery if they (1) published as true, (2) a forged or altered document, (3) knowing that the document was forged or altered, and (4) had the intent to defraud.   *See id.*

Vaughan asserts that Carlock employees committed the crime of uttering a forgery when they altered financial documents to include extended warranties and "gap" insurance coverage when the customer had not requested these things and by increasing the interest rate to more than what the customer had agreed to at the time of sale.   Vaughan, however, has failed to adduce adverse countervailing evidence to show that there is a genuine dispute as to any material fact, offering instead only unsubstantiated assertions that documents were altered and failing to provide evidence that any particular document was altered with the intent to defraud Carlock customers, as required by Mississippi

law.  In particular, Vaughan does not specify which documents were altered. Furthermore, and possibly because she was not part of the sales process between Carlock and its customers, Vaughn did not adduce evidence, as required under Rule 56(c), that she witnessed the sales transactions and therefore could testify as to the parties' communications and actions that culminated in the illegal acts that Carlock employees allegedly committed.  Accordingly, she lacks first-hand knowledge of what customers agreed to and what the financial documents particular to each transaction ultimately provided.  She has therefore failed to demonstrate a genuine issue of material fact that she reported conduct that was actually illegal under Mississippi law governing uttering a forgery, and thus summary judgment in Carlock's favor, as permitted by Rule 56(e), was appropriate.

## C.

The Mississippi mail-fraud statute prohibits certain actions intentionally taken for pecuniary advantage "by means of false or fraudulent pretenses, representations, or promises." MISS. CODE. ANN. § 97-19-83(1). Vaughan asserts that Carlock committed fraud when it advertised, via U.S. mail, that customers could win certain prizes, including a new car if the key that was mailed to the potential customer unlocked the car in question.  Vaughan reported that no Carlock employee ever handed out any prize or, if someone did, the prizes were small and of little monetary value, exceeded by the shipping and handling fees prize recipients were required to pay.

Carlock, however, presented evidence that the winning key was placed in the mail and that the dealership could not guarantee that the recipient would actually present it and claim the prize.  Moreover, Vaughan does not cite any authority providing that giving a prize that has little to no monetary value runs afoul of Mississippi's mail-fraud statute.  Further, because Vaughan has failed to show by adducing appropriate adverse countervailing evidence that Carlock

intended to defraud its customers by making false representations, she failed to demonstrate a genuine issue of material fact regarding whether she reported conduct that was actually illegal under the mail-fraud statute. Summary judgment, as permitted by Rule 56(e), was therefore properly granted with respect to this claim.

**D.**

Mississippi's false-pretense law provides:

> Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony and punished by imprisonment in the State Penitentiary not exceeding ten (10) years, and by a fine not exceeding Ten Thousand Dollars ($10,000.00).

MISS. CODE ANN. § 97-19-39(2). "The gravamen of the offense of false pretenses is a false representation of a past or existing fact, made by [the] accused with knowledge of its falsity and with intent to deceive, a reliance thereon, and the obtaining of something of value thereby without compensation." *Patton v. State*, 34 So. 3d 563, 573 (Miss. 2010).

Vaughan reported that Carlock had agreed to "repair" a customer's credit in the course of four to six months in exchange for $400 to $800 and a "sponsor" to co-sign the car loan; and agreed that after the customer's credit was repaired, the sponsor would be relieved of his or her liability for the loan, the customer would be solely responsible for it, and that the interest rate on the loan would be reduced. Vaughan alleged that the credit scores of the customers availing themselves of this "clean sweep" program were not repaired, that the sponsors remained liable for the car loans, and that the customers' interest rates were not lowered. Vaughan also reported that Carlock agreed to pay off one customer's

No. 12-60568

traded-in vehicle but failed to do so. Finally, Vaughan alleged that one car had been advertised and sold as having air conditioning when in fact it did not.

However, Vaughan did not properly support her assertions of these facts, or address Carlock's contrary assertions of fact, as required by Rule 56(c), and the district court properly granted summary judgment in favor of Carlock as permitted under these circumstances by Rule 56(e). Although Vaughn argues that Carlock "falsely" represented that the program would repair customers' credit scores, she points to no evidence that this was Carlock's plan, intention, or expectation when it contracted with a particular customer. Nor did Vaughn provide any support for her assertions that Carlock intentionally failed to pay off the debt on traded-in cars. The same is true of Vaughan's allegation that one car was falsely sold as having air conditioning because Vaughn failed to support her assertion of fact that the car was represented to have air conditioning by Carlock with the intent to defraud the customer. In fact, Hill stated in his deposition that this was an honest mistake that was later corrrected, and Vaughan failed to address Hill's contrary assertion as required by Rule 56(c). Because Vaughan failed to properly support or address facts constituting the elements of the crime of false pretenses, the district did not err in granting Carlock summary judgment on these issues.

## II.

Vaughan asserts that Hill committed the Mississippi tort of tortious interference with employment when he terminated her employment, allegedly in bad faith. Specifically, she alleged that Hill knew that she had reported conduct to Nissan and that he fired her because of what she reported. Hill, in contrast, contends that although he was aware that Vaughan had complained to Nissan, he did not know that he was a subject of Vaughan's complaints and thus could not have fired Vaughan in bad faith. Hill, the moving party, has adduced record evidence—namely, his deposition—to demonstrate what he

9

claims is the absence of a genuine issue of material fact regarding whether he knew the contents of Vaughan's complaints to Nissan and therefore could have terminated her in bad faith.  Accordingly, it was incumbent on Vaughan to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.  We conclude that Vaughan has done this.  Because she has demonstrated the existence of a genuine issue of material fact with respect to whether Hill terminated her in bad faith, summary judgment was not warranted.

## A.

"One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract."  *Shaw v. Burchfield*, 481 So. 2d 247, 254-55 (Miss. 1985).  To support her tortious interference with employment claim, Vaughan must establish that her termination was (1) intentional and willful; (2) calculated to cause her damage; (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant; and (4) resulted in actual damage and loss. *McClinton v. Delta Pride Catfish, Inc.*, 792 So. 2d 968, 976 (Miss. 2001).

The Mississippi Supreme Court has recognized that "a claim for tortious interference with at-will contracts of employment is viable in [Missisippi]." *Levens v. Campbell*, 733 So.2d 753, 760 (Miss. 1999).  However, "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person."  *Shaw*, 481 So. 2d at 255.  Hill occupied a position of responsibility, acting on behalf of Carlock, and thus was

privileged to interfere with Vaughan's employment unless he did so in bad faith or outside the scope of his employment. *See id.* Consequently, we must consider whether Vaughan has demonstrated a genuine issue of material fact regarding whether Hill interfered with her employment in bad faith. Vaughan may satisfy this "bad faith exception" by showing that Hill acted with malice, in other words, that he terminated Vaughan "*without right or good cause.*" *Morrison v. Miss. Enter. for Tech.*, 798 So. 2d 567, 575 (Miss. App. 2001).

## B.

Vaughan presented evidence, in the form of her affidavit, that on or about April 2, 2009 she reported the conduct that she believed to be illegal to Nissan but, out of concern for her job, used a pseudonym to do so. Roughly three weeks later, seven Carlock employees, all of whom, according to Vaughan, were involved in the reported activities, were terminated. However, Hill was not among them. On or about April 30, 2009, Vaughan again called Nissan, stating, "you did not get them all," and specifically named Hill. It seems that Vaughan again used a pseudonym. It was not until June 11, 2009, when Vaughan again called Nissan, that she identified herself. Four day later, she was terminated. She claims that on the day she was fired, Hill told her that she had "no right to report these things to Nissan."

The evidence in the record also includes deposition testimony from Hill stating that, at the time he terminated Vaughan, he knew that she had made a complaint of some sort to Nissan regarding Carlock. However, he claimed that he did not know the *contents* of the complaint. He explained that he first learned about Vaughan's call to Nissan when somebody told him about it. That person had apparently received some sort of report from Nissan. On learning of Vaughan's call to Nissan, Hill confronted Vaughan and asked her if she had indeed complained to Nissan, and, according to Hill, she denied doing so. Hill said that he was later handed "the actual complaint" and he again confronted

No. 12-60568

Vaughan, at which point she confirmed that she had called Nissan.[1]    Hill asserted that he never read the full complaint but instead, after receiving it, saw that it had Vaughan's name at the very top and at that point, he purposefully stopped reading it and confronted Vaughan and terminated her employment immediately.

## C.

The district court determined that summary judgment in Hill's favor was warranted because Vaughan had failed to adduce evidence that Hill knew that Vaughan had complained to Nissan specifically about him.    However, Mississippi law does not require this level of proof, and neither the district court nor Hill cited any case law in support of that assertion.    Rather, we conclude that Vaughan, relying on appropriate evidence as required by Rule 56(c), has created a genuine issue of material fact regarding whether Hill terminated her in bad faith—in other words, that Hill terminated Vaughan "*without right or good cause*"—which is all that Mississippi law requires.  *See, e.g.*, *Morrison*, 798 So. 2d at 575.

It is undisputed that Vaughan's reports to Nissan were *a* factor in Hill's decision to fire her (Hill explained as much in his deposition).    Hill offered additional explanations for his decision, including cost cutting due to economic downturn,[2] that Vaughan complained to Nissan rather than raising her concerns with Hill first,[3] and that Vaughan, when first confronted about her call to

---

[1] The record reflects that the complaint Hill received and the call log, describing Vaughan's complaints to Nissan, are distinct.  For instance, the call log does not identify Vaughan by name, whereas Hill testified that the complaint he received was a typewritten document from Nissan with Vaughan's name written at the very top.

[2] Hill stated that only two employees, Vaughan and her immediate supervisor, Jeff Adams, were terminated due to financial reasons.  He further testified that Adams was subsequently rehired.

[3] Although Hill described a company policy directing employees to raise concerns first with their immediate supervisor and second with the company vice president (Hill), Vaughan

12

Nissan, initially denied it. Nevertheless, it is undisputed that Vaughan's termination occurred four days after she called Nissan, identified herself, and specifically named Hill, as she explained in her affidavit. Furthermore, Vaughan specifically alleged in her affidavit that Hill, when terminating her, told her that she had "no right to report these things to Nissan." Whether to credit his alternative explanations—and, for that matter, whether to credit his assertion that he was unaware of the contents of Vaughan's complaints because he did not read the document he was handed and that listed Vaughan's name at the top—as "good causes" within the meaning of Mississippi's bad-faith exception involves credibility determinations inappropriate for summary judgment. *See Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003) (noting that we "must review all of the evidence in the record, but make no credibility determinations or weigh any evidence"). "In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as evidence supporting the moving party that is uncontradicted and unimpeached." *Id.* at 413. Reading the record in the light most favorable to Vaughan, we conclude that she has presented sufficient evidence to create a genuine issue of material fact with respect to whether Hill fired her for exposing allegedly illegal activities at the dealership, which we think suffices as bad faith termination under Mississippi law. Ultimately, of course, it is up to the trier of fact to decide whose version of events should be believed.

---

testified that she had never received a copy of the employee handbook. Furthermore, Hill admitted that there was no policy in the handbook prohibiting employees from calling Nissan directly.

No. 12-60568

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Carlock with respect to Vaughan's claim that she satisfied Mississippi's illegal-acts exception. However, we REVERSE the district court's grant of summary judgment in favor of Hill with respect to Vaughan's tortious interference with employment claim and REMAND the case to the district court for further proceedings not inconsistent with this opinion.