626 So.2d 603 (1993)
James Garland McARN
v.
ALLIED BRUCE-TERMINIX COMPANY, INC.
No. 90-CA-939.
Supreme Court of Mississippi.
August 19, 1993.
Rehearing Denied November 24, 1993.
*604 Jim Waide, Waide Law Office, Tupelo, for appellant.
Taylor B. Smith and Timothy M. Threadgill, Mitchell McNutt Threadgill Smith & Sams, Columbus, and Guy W. Mitchell, III, Mitchell McNutt Threadgill Smith & Sams, Tupelo, for appellee.
Before HAWKINS, C.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
This case calls upon this Court to revisit our long-standing common law rule that the employment contract at will may be terminated by either party with or without justification.
James McArn, an employee at will, has sued his former employer, Allied Bruce-Terminix Company, Inc., for wrongful discharge. He asks this Court to create a narrow public policy exception to our long-standing employment at will rule.
At trial, when McArn rested, Terminix moved for a directed verdict, which was granted by the trial court. On appeal, McArn assigns two errors:
I. The circuit court erred in holding the employment at will doctrine permits an employee to be discharged for refusing to participate in criminal activity; and,
II. The circuit court erred in directing a verdict for Terminix on McArn's claim that he had been defamed before the Mississippi Employment Security Commission.
On October 17, 1988, McArn signed an employment contract with Terminix, and the terms of this contract allowed either the employer or the employee to terminate employment at any time, with or without cause.
In March, 1989, David Howell became the branch manager of the Columbus, Mississippi, office for Allied-Bruce Terminix. McArn was assigned to show Howell around the Columbus facilities. At trial Howell testified that McArn's personal appearance did not meet the requirements of corporate policy and that his equipment was dirty.
Howell also said that McArn was resentful to him for making remarks about McArn's personal appearance and the cleanliness of his truck and equipment. During Howell's first week as branch manager, he gave McArn a written citation for his personal appearance, attitude, tardiness, and job performance. Howell testified that McArn refused to sign this citation.
*605 In April, 1989, Howell claims that he gave McArn another written reprimand for his insubordinate attitude, and that he reported McArn's attitude to David Poole, the regional manager, but that Poole asked Howell not to give up on McArn.
McArn claims to have been given only one disciplinary action report. He stated that this report was given to him by Howell five days prior to his being fired, and this report stated that he had a bad attitude. McArn testified that he never came to work unshaven or sloppily dressed. He stated that Howell had only reprimanded him for being late on one occasion.
McArn testified that as early as May of 1989, he had called John Headley, the Quality Control man for Allied Terminix, and complained about working conditions. McArn testified that he told Headley that Howell was making him lie and cheat the customers about their termite treatment and would not let McArn properly do his job.
The next working day, which was the following Monday, Howell called McArn into his office and castigated him about making a phone call to Headley and told him, "we don't need your kind around here no way. You're fired buddy."
As might be expected this is not Howell's version of the events. Howell agrees that he did call McArn into his office to discuss the call to Headley, but he did not intend to fire him until McArn called him a "no good son of a bitch," and that was the reason that he fired McArn.
McArn testified that he was constantly required by Howell to falsify his chemical reports that were to go to the State Agricultural Department. He mentioned numerous jobs where he was instructed to apply inadequate chemical treatment by Howell. On some of these jobs, such as the New Home Building Supply job, he said Howell made him tell the customer the job was complete when McArn and Howell both knew the job was not completed.
Howell testified that he never asked McArn to falsify any information on his paperwork that was to be submitted to the state. He also said that he never told McArn to falsify the chemical reports, but he did tell McArn to make do with the amount of chemicals that they had. Howell denied telling McArn to lie to the New Home Building customer about the job having been completed.
Bobby Joe Jones, the manager of New Home Building Store, stated that about one week after McArn and Howell treated his store, McArn told him that no chemicals were applied and that he should contact Mr. Haskins, with the State of Mississippi, for an inspection of the work. Jones said that Howell had lied to him about putting jacks under the foundation on part of his building because that part of the foundation was sitting directly on the ground. Jones also stated that Howell had told him that the job had been completed.
A few days after McArn told Jones that no chemicals were used on this job, Howell and another Terminix employee returned and asked Jones if they could re-treat the premises. Jones told them that they would have to check with the state first.
Jim Haskins, a Department of Agriculture Supervisor, testified that he examined the termite work done at the New Home Building Store, and that New Home had not been properly treated. He also testified that McArn told him of other jobs that were not properly treated. Investigations were made into two other jobs, which McArn identified as inadequately treated, and the investigations revealed that these treatments were in fact inadequate.
John Headley, the Terminix Quality Control man, testified that while McArn did keep his truck very dirty, he was a good employee with an impressive work record. He remembered that McArn and other employees complained that they were overworked, but he did not remember McArn complaining about Howell making him lie to customers. However, in a prior deposition, Headley testified that he recalled McArn telling him that Howell required him to lie to customers about the thoroughness of their work.
David Poole, the regional manager, testified that he was told by Howell that McArn had a bad attitude. Poole stated that he *606 learned that Howell had lied to him about the New Home job. Prior to McArn's termination, Poole was not aware of any claim by McArn that he was being required to apply insufficient chemicals to termite treatments.
When Terminix moved for its directed verdict at the end of McArn's case, McArn asked the trial court to carve out a public policy exception to the employment at will rule in this state, but the trial judge did not feel that the facts of this case warranted carving out such an exception.

I.

DID THE CIRCUIT COURT ERR IN HOLDING THAT THE EMPLOYMENT AT WILL DOCTRINE PERMITS AN EMPLOYEE TO BE DISCHARGED FOR REFUSING TO PARTICIPATE IN CRIMINAL ACTIVITY?
McArn's position is that he was discharged because he reported conduct of Terminix which caused members of the public to be deceived. McArn contends that he was reporting conduct which amounted to a crime under Miss. Code Ann. §§ 97-19-39 and 69-23-19 (1972) (felony to receive money under false pretense and misdemeanor to violate state pest control regulations).
In Kelly v. Mississippi Valley Gas Co., 397 So.2d 874 (Miss. 1981), Kelly claimed that he was discharged for refusing to dismiss a claim with the Mississippi Workmen's Compensation Commission based upon a work related injury. In denying Kelly actual or punitive damages, this Court said "that Mississippi followed the common law rule that a contract for employment for an indefinite period may be terminated at the will of either party." Id. at 874. Also, an employer or an employee may have a good reason, a wrong reason, or no reason at all for termination. Id. at 875. We further stated that:
We therefore decline to adopt a public policy exception to the common law rule that an employment contract at will may be terminated by either party with or without justification, and decline to create a common law tort action against an employer by an employee who has been discharged for filing a workmen's compensation claim.
Id. at 877.
We revisited this issue in Shaw v. Burchfield, 481 So.2d 247 (Miss. 1985). In Shaw, we were presented with a written insurance agency manager's contract which provided for termination on ten (10) days written notice. Id. at 248. The discharged employee contested the Mississippi employment at will doctrine, but we held that the rights and powers of these parties were governed by privately made law furnished by the parties themselves. Id. at 254. Shaw, like this case, dealt with a separate written contract. It is interesting to note that in all three of the contracts in the Shaw case there was a clause which allowed for immediate termination for the commission of any act of dishonesty or fraud. Also of note is that in Shaw there was no claim that the company sought to force the employee to engage in illegal or fraudulent conduct.
However, we did note in Shaw that "[u]nder fire is the notion that, absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." Id. at 253-54; See Mississippi Employment Security Commission v. Philadelphia Municipal Separate School District, 437 So.2d 388, 397 (Miss. 1983).
In Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss. 1987), we were faced with an employee who brought an action against his former employer for breach of contract and wrongful termination. We noted that Mississippi has followed the employment at will doctrine since 1858. Id. at 1088. We also said that wrongful discharge actions, which are not founded on contract, essentially sound in tort. Id. at 1089. The theory is based on an implied covenant of good faith and fair dealing, when breached by malicious termination or harassment, gives the victim a tort action for wrongful discharge. Id. However, in Perry we concluded that even if we adopted that approach, Perry would probably not prevail on the facts of the record before us. Id.
*607 In Empiregas Gas, Inc. of Kosciusko v. Bain, 599 So.2d 971, 974 (Miss. 1992), we again noted Mississippi's long-standing adherence to the common-law rule of termination at will, but addressed Bain's termination for "wrong reasons" in order to afford him all the equitable relief to which he was entitled. The main thrust of Bain was that an employee who had been discharged in bad faith would not have the terms of a previously executed non-competition agreement enforced against him. Id. at 977.
In Bobbitt v. The Orchard, Ltd., 603 So.2d 356, 361 (Miss. 1992), we made reference to Shaw and stated that we would be looking for a wiser and more humane alternative to the terminable at will rule in employment contracts. In Bobbitt, unlike McArn, an employee manual set forth the administrative procedures which would be followed after employee misconduct or incompetence.
The employment at will issue has also presented problems for the federal courts, and absent any public policy exceptions stemming from this Court, the federal courts have had to attempt to assess how this Court would react were it under a given set of facts. In Laws v. Aetna Finance Co., 667 F. Supp. 342 (N.D.Miss. 1987), Laws was allegedly fired from the defendant company for refusing to "pack" insurance policies with loans that he made on behalf of Aetna in the State of Mississippi. Such an activity violated both state and federal laws. Id. at 343-44. The Federal Court stated that the Mississippi Supreme Court had not previously decided a case applicable or similar to the case sub judice. Id. at 344.
The district judge stated that while it was not his province to create new law in Mississippi, he was permitted to "reach the decision that we think a state court would reach." Id. In the district judge's opinion, the Mississippi Supreme Court would not have found that Aetna was entitled to judgment as a matter of law. Id. In addition, the federal judge noted that dicta from the Mississippi Supreme Court persuaded him that our Court would recognize a cause of action under the circumstances alleged in that case. Id. at 345.
In the district court's opinion, the Mississippi Supreme Court would view this case, where an employee was allegedly discharged for refusal to commit illegal acts on behalf of his employer, as an appropriate situation in which to create a narrow public policy exception to this age old rule. Id. at 346. "Without question, the general rule is that there are situations justifying exceptions to the termination at will rule, as well there should be." Id. at 347. Furthermore,
The court finds no contrary evidence that Mississippi would reject the opportunity presented in this case to adopt a narrow public policy exception to the termination at will doctrine, given a factual situation in which an at-will employee is discharged for refusing to commit unlawful acts for his employer.
Id. at 348.
We are of the opinion that there should be in at least two circumstances, a narrow public policy exception to the employment at will doctrine and this should be so whether there is a written contract or not: (1) an employee who refuses to participate in an illegal act as in Laws shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer. To this limited extent this Court declares these public policy exceptions to the age old common law rule of employment at will. These exceptions apply even where there is "privately made law" governing the employment relationship, where the illegal activity either declined by the employee or reported by him affects third parties among the general public, though they are not parties to the lawsuit.
We therefore reverse the directed verdict granted to Allied-Bruce Terminix, Inc., and remand this case for a determination of whether or not McArn was actually discharged for a refusal to commit deceptive, fraudulent or illegal actions against the clients of Terminix or for reporting same.
*608 We leave for another day the question of whether or not such conduct by the employer, if found, is in bad faith or an independent tort giving rise to punitive damages.

II.

DID THE CIRCUIT COURT ERR IN DIRECTING A VERDICT FOR TERMINIX ON McARN'S CLAIM THAT HE HAD BEEN DEFAMED BEFORE THE MISSISSIPPI EMPLOYMENT SECURITY COMMISSION?
In considering a motion for directed verdict, the evidence before the court must be viewed in a light most favorable to the non-movant, who must be given the benefit of all favorable inferences. Benjamin v. Hooper Electronic Supply Co., Inc., 568 So.2d 1182, 1187 (Miss. 1990).
McArn argues that the Mississippi Employment Security Commission was falsely told that he was terminated for a bad attitude and not told the true reason for his firing. McArn argues that Miss. Code Ann. § 71-5-131 (1972) permits a claim for defamation whenever the employer makes statements to the Commission which are "false in fact and maliciously ... made for the purpose of causing a denial of benefits."
There is no question but that Miss. Code Ann. § 71-5-131 provides that communications between an employer and the Commission are privileged and "when qualified privilege is established, statements or written communications are not actionable as slanderous or libelous absent bad faith or malice if the communications are limited to those persons who have a legitimate and direct interest in the subject matter." Benson v. Hall, 339 So.2d 570, 573 (Miss. 1976).
In his complaint, McArn charged that Terminix maliciously defamed him before the Mississippi Employment Security Commission by stating he was fired for a "bad attitude." At trial, McArn testified that Terminix's contention that he was insubordinate was false. That is the extent of McArn's evidence of defamation.
Under the statute and our case law, McArn has failed to prove that the statements made by Terminix to the Employment Commission were false or maliciously made; therefore, these statements maintain their privileged status and cannot be the basis for a libel or slander suit.
The directed verdict on behalf of Terminix on the defamation issue was not error and is affirmed.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED TO THE CIRCUIT COURT OF LOWNDES COUNTY, MISSISSIPPI.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr., and SMITH, JJ., concur.