# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-CA-00040-SCT

*RONALD P. YOUNG*

*v.*

*NORTH MISSISSIPPI MEDICAL CENTER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/28/1999 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM WAIDE |
| ATTORNEYS FOR APPELLEE: | MICHAEL FARRELL |
| | PHILLIP LANE NORWOOD |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 01/25/2001 |
| MOTION FOR REHEARING FILED: | 2/21/2001; denied 5/17/2001 |
| MANDATE ISSUED: | 5/24/2001 |

**BEFORE PITTMAN, C.J., MILLS AND WALLER, JJ.**

**PITTMAN, CHIEF JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Ronald P. Young ("Young") filed a lawsuit against his former employer, North Mississippi Medical Center ("NMMC"), in the Circuit Court of Lee County on July 16, 1997. The complaint alleged causes of action for negligent infliction of emotional distress and breach of an implied covenant of good faith and fair dealing in an employment contract. The matter came before the circuit court on NMMC's motion to dismiss. In both his written response to the circuit court and orally at the hearing on the motion, counsel for Young advised the court that the defendant's motion to dismiss the claim for the negligent infliction of mental distress was well taken and should be granted. Circuit Judge Thomas J. Gardner, III dismissed the remaining claim with prejudice, ruling that Young failed to state a claim upon which relief could be granted. Young appeals from the circuit court's grant of the Motion to Dismiss. He asks this Court to recognize an implied obligation of good faith in an at-will employment relationship. Finding no error in the trial court's judgment, we affirm.

## STATEMENT OF FACTS

¶2. Ronald P. Young was employed as a registered nurse with NMMC from February 1994 until March 27, 1997 when he voluntarily resigned. While employed by NMMC, Young witnessed actions by his fellow nurses which he personally believed to be "incidents of negligence and malpractice."

¶3. In one particular incident, Young noticed that a patient was losing blood. He reported the blood loss to the charge nurse who told him not to worry and to change the patient's dressing. When Young later checked on the patient, he noticed that her blood pressure was critically low, and he and another nurse initiated CPR. Young stated in his complaint that the patient "was in dire need of blood, but there was no blood standing by." The patient was later pronounced dead due to a heart attack. Young believes that the patient's death "was related to blood loss."

¶4. Young reported the incident to hospital administration. He stated that he "firmly believe[d]" the patient's death "was partially the result of [the charge nurse's] lack of concern." Young later submitted a supplemental report detailing other incidents of "failure to provide proper medical care" such as:

> A. Instructing [Young] in his orientation to back time the narcotics given in the post-anasthesia care unit to bypass the required thirty minute observation post-narcotic period;

> B. Intentionally inflating a patient's oxygen level in order to have the patient discharged from the PACU.

¶5. After filing his reports, Young met with the hospital administrator, hospital counsel, and the director of surgery concerning his allegations of malpractice. In the meeting, Young requested that disciplinary action be initiated and that the family of the patient who had died be notified of "the neglect." Young claims that he was told "not to tell anyone" about what he had witnessed.

¶6. Young alleges that after making his reports, "no meaningful action" was taken by the administrator, counsel, and director of surgery against any nurses. Young also states that he subsequently received extremely low peer evaluation ratings from the nurses about whom he complained which made it difficult for him to advance in his nursing career. Young claims that after making his reports, he was transferred to another position "where he would not have knowledge of the ongoings which were jeopardizing patient care." Young ultimately left his employment since "he could no longer tolerate the substandard medical care and cover ups of substandard medical care."

## STATEMENT OF THE ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT MISSISSIPPI DOES NOT RECOGNIZE AN IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN AN EMPLOYMENT AT-WILL RELATIONSHIP.**

**II. WHETHER MR. YOUNG MAY ARGUE FOR THE FIRST TIME ON APPEAL THAT HE WAS CONSTRUCTIVELY DISCHARGED IN RETALIATION FOR REPORTING THE NEGLIGENCE OF HIS CO-WORKERS.**

## STANDARD OF REVIEW

¶7. A motion to dismiss under M.R.C.P. 12(b)(6) raises an issue of law. *Mississippi Transp. Comm'n v. Jenkins*, 699 So.2d 597, 598 (Miss. 1997); *T.M. v. Noblitt*, 650 So.2d 1340, 1342 (Miss. 1995); *Tucker v. Hinds County*, 558 So.2d 869, 872 (Miss. 1990); *Lester Eng'g Co. v. Richland Water & Sewer Dist.*, 504 So.2d 1185, 1187 (Miss. 1987). This Court conducts de novo review on questions of law. *Mississippi Transp. Comm'n v. Jenkins*, 699 So.2d at 598; *UHS-Qualicare, Inc. v. Gulf Coast*

*Community Hosp., Inc.*, 525 So.2d 746, 754 (Miss. 1987). When considering a motion to dismiss, the allegations in the complaint must be taken as true, and the motion should not be granted unless it appears beyond doubt that the plaintiff will be unable to prove any set of facts in support of his claim. *T.M.*, 650 So.2d at 1342; *Trammell v. State*, 622 So.2d 1257, 1259 (Miss. 1993); *Overstreet v. Merlos*, 570 So.2d 1196, 1197 (Miss. 1990).

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT MISSISSIPPI DOES NOT RECOGNIZE AN IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING IN AN EMPLOYMENT AT-WILL RELATIONSHIP.

¶8. Young argues on appeal that the circuit court erred in granting NMMC's motion to dismiss since even at-will employment contracts contain an implied obligation of good faith.

¶9. There are numerous Mississippi contract cases that state that all contracts contain an implied duty of good faith and fair dealing, but this Court has never recognized a cause of action based on such a duty arising from an *employment at-will* relationship. This Court has specifically held that at-will employment relationships are not governed by a covenant of good faith and fair dealing which gives rise to a cause of action for wrongful termination. *Hartle v. Packard Elec.*, 626 So.2d 106, 110 (Miss. 1993); *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1089 (Miss. 1987). Recently, the Court reaffirmed its stance. *Cothern v. Vickers, Inc.*, 759 So.2d 1241, 1248 (Miss. 2000); *Slatery v. Northeast Miss. Contract Procurement, Inc.*, 747 So.2d 257, 259 (Miss. 1999).

¶10. An implied covenant of good faith and fair dealing is usually asserted to constitute the basis of a tort claim for wrongful discharge. *Perry*, 508 So.2d at 1089. In *Perry*, the plaintiff claimed that an implied contract existed which forbade the defendant from terminating him without cause. *Id*. at 1087. Young's claim is unusual in that he seeks damages for breach of a covenant of good faith and fair dealing even though he voluntarily resigned.

¶11. There exists some confusion as to the exact nature of the duty Young claims he was owed by NMMC. The circuit court construed Young's complaint to assert a breach of "an implied duty to insure that co-workers did not commit negligence or generally failing to provide a negligent-free workplace." In his Reply Brief to this Court, Young states that "Defendant and the lower court misinterpret...Young's claim," and that in fact, his claim "is based on fraud in covering up grossly negligent conduct which resulted in the death of a patient."

¶12. It is immaterial, though, whether Young is referring to NMMC's duty to provide a negligence-free workplace or to refrain from concealing malpractice since a duty of good faith and fair dealing is not implicated in Young's situation. Young was never discharged; rather, he voluntarily resigned. Therefore, the good faith and fair dealing issue is without merit.

### II. WHETHER YOUNG MAY ARGUE FOR THE FIRST TIME ON APPEAL THAT HE WAS CONSTRUCTIVELY DISCHARGED IN RETALIATION FOR REPORTING THE NEGLIGENCE OF HIS CO-WORKERS.

¶13. In *McArn v. Allied-Bruce Terminix Co.*, 626 So.2d 603 (Miss. 1993), this Court recognized a public policy exception to the employment at-will doctrine where an employer may not *discharge* an

employee in retaliation for the employee's 1) refusing to participate in illegal acts; or 2) reporting *illegal* acts of his employer. ***Id.*** at 606. Young was not discharged; rather, he voluntarily terminated his employment with NMMC. In his appeal to this Court however, Young argues that the ***McArn*** exception applies because he was *constructively* discharged in retaliation for reporting the acts of his co-workers.

¶14. Young failed to plead either constructive or retaliatory discharge in the circuit court. Consequently, this Court need not reach the issues of either constructive or retaliatory discharge.

## CONCLUSION

¶15. The circuit court did not err in granting NMMC's motion to dismiss as Young failed to state a claim upon which relief may be granted. Therefore, the judgment of the Lee County Circuit Court is affirmed.

¶16. **AFFIRMED.**

> **BANKS, P.J., SMITH, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ.**

> **McRAE, PRESIDING JUSTICE, DISSENTING:**

¶17. I dissent to the majority opinion as it states there is no recognition of an obligation of good faith and fair dealing in employment at-will relationships in this state. In this case, Young was forced to leave what had been his place of employment for over three years because of his knowledge of negligent behavior that had occurred at the North Mississippi Medical Center ("NMMC"). Young was demoted from his position and put in a position of employment where he would be shielded from witnessing any other potentially negligent behavior. Young asserts that he was kept from advancing in his chosen field at his chosen place of employment because of his reporting what he considered to be negligent acts. Clearly, NMMC retaliated against Young for his reporting of these alleged negligent acts, acting in violation of Mississippi statutory law. Essentially, Young was forced to resign from his position because of the working conditions at NMMC. Because Young's resignation was the product of retaliation on the part of NMMC, and at least this is a jury issue, I dissent.

¶18. Young was acting in accordance with his position as a registered nurse when he reported what he believed to be negligent behavior on the part of other employees to the proper officials at NMMC. Young was acting according to his duties under Mississippi statutory law. *See* Miss. Code Ann. §§ 41-9-1(1993) & 43-47-37 (2000).

¶19. Miss. Code Ann. § 41-9-1 states,[1]

> The purpose of sections 41-9-1 to 41-9-35 is to protect and promote the public health by providing for the development, establishment and enforcement of certain standards in the construction, maintenance and operation of hospitals which will insure safe, sanitary and reasonably adequate care and treatment of individuals in hospitals. The legislature hereby finds that the protection and promotion of the public health requires the measures provided for in said sections.

¶20. Miss. Code Ann. § 43-47-37(1) states,

Any person who, within the scope of his employment at a care facility as defined in Section 43-47-5, or in his professional capacity, has knowledge of or reasonable cause to believe that any patient or resident of a care facility has been the victim of abuse or exploitation shall report or cause a report to be made of the abuse or exploitation.

¶21. Miss. Code Ann. § 43-47-37(5)(a) & (b) further states,

5(a) Any individual who, in good faith, makes a report as provided in this section or who testifies in an official proceeding regarding matters arising out of this section shall be immune from all criminal and civil liability, except for perjury or the giving of a false report.

(b) No person shall **terminate from employment, demote, reject for promotion or otherwise sanction, punish or retaliate against any individual** who, in good faith, makes a report as provided in this section or who testifies in any official proceeding regarding matters arising out of this section.

¶22. Although § 43-47-37 is part of the Mississippi Vulnerable Adults Act of 1986, Miss. Code Ann. §§ 43-47-1 to -37 (2000), these code sections should extend to Young in his position as a registered nurse. Surely, acts of negligence resulting in the death of a patient are as important to report as acts of abuse and exploitation. Young had a duty to report any abuse or lack of care, and he is protected by the above statute from any retaliation or demotion on the part of his employer. In addition, § 43-47-37 refers to a "care facility as defined in Section 43-47-5," and § 43-47-5(b) states that, a "'Care facility' shall mean: (iii) Any hospital as defined in and required to be licensed under, the provisions of Section 41-9-1 et seq." Section 41-9-1 applies to this case by virtue of its general purpose, and therefore, NMMC is covered by this statute.

¶23. *McArn v. Allied Bruce-Terminix Co.,* 626 So. 2d 603, 607 (Miss. 1993), created two exceptions to the employment at-will doctrine based on public policy reasons. These exceptions state that employees who refuse to participate in illegal activities or who are discharged for reporting the illegal acts of his employer to his employer or to anyone else are not barred from bringing a tort action for damages against his employer. *See also [Willard v. Paracelsus Health Care Corp.](),* 681 So. 2d 539, 542 (Miss. 1996).

¶24. Although *McArn* concerns the exceptions for reporting illegal acts, this rationale should also be extended to situations where an employee is complying with statutory provisions to promote the public good. To hold otherwise would go against the intent of the Legislature.

¶25. Therefore, I would find that there exists an employment at-will contract and an implied duty of good faith and fair dealing in this case. Young could have had his license as a registered nurse revoked pursuant to Miss. Code Ann. § 73-15-29 (2000) if he had not reported these alleged acts of negligence to the proper officials. We should not hold that the employer can retaliate against the employee when the employees protect the public health by reporting improper medical care. We should carry out the intent of the Legislature, as stated in Miss. Code Ann. §§ 41-9-1 and 43-47-37, to provide safe, sanitary, reasonable, and adequate medical care. For the above reasons, I dissent.

**DIAZ AND EASLEY, JJ., JOIN THIS OPINION.**

1. Chapter 9 of Title 41 of the Mississippi Code Annotated is entitled, "Regulation of Hospitals; Hospital Records."