# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00484-COA

**FRED WHITE**                                                                          **APPELLANT**

**v.**

**KENN COCKRELL, INDIVIDUALLY AND AS**                          **APPELLEES**
**PRESIDENT OF THE HINDS COUNTY HUMAN**
**RESOURCE AGENCY; AND HINDS COUNTY**
**HUMAN RESOURCE AGENCY**

DATE OF JUDGMENT:              04/07/2014
TRIAL JUDGE:                  HON. TOMIE T. GREEN
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       SUZANNE GRIGGINS KEYS
ATTORNEY FOR APPELLEES:       J. TUCKER MITCHELL
NATURE OF THE CASE:           CIVIL - TORTS - OTHER THAN PERSONAL
                              INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION:      GRANTED SUMMARY JUDGMENT IN
                              FAVOR OF APPELLEES
DISPOSITION:                  AFFIRMED IN PART; REVERSED AND
                              REMANDED IN PART: 12/08/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.     Fred White, an at-will employee, sued his former employer, the Hinds County Human

Resource Agency (HCHRA), and Kenn Cockrell, individually and in his capacity as

president of HCHRA, for wrongful termination.  White asserted his termination fell within

one of the public policy exceptions provided in *McArn v. Allied Bruce – Terminix Co.*,[1]

_____

[1] 626 So. 2d 603 (Miss. 1993).

claiming he was fired because he refused to engage in illegal activity. He also brought claims of conspiracy, breach of contract, infliction of emotional distress, libel, and slander. HCHRA and Cockrell moved for partial summary judgment on the *McArn* claim and the breach-of-contract claim. The trial court granted HCHRA and Cockrell's motion and also dismissed White's remaining claims sua sponte.

¶2. On appeal, White challenges the court's grant of summary judgment on all claims except the breach-of-contract claim.[2] We find the court's grant of summary judgment on the *McArn* claim was proper. However, we find that the court erred in granting summary judgment on the remaining claims. We affirm in part and reverse and remand in part.

## STATEMENT OF THE FACTS

¶3. On November 22, 2010, the HCHRA hired White as the vice president of Head Start and Early Childhood Development. His employment was contingent on the successful completion of a six month provisional period.

¶4. Cockrell issued White a warning letter on May 2, 2011, near the end of the provisional period. The letter addressed White's failure to properly investigate and obtain proper statements about a complaint against employees under White's supervision. Cockrell told White that he had failed to:

(1) follow through on assigned tasks in a timely, appropriate manner;

---

[2] Since White does not argue the breach-of-contract claim on appeal, we will not address the court's summary judgment grant on that claim.

2

(2) follow managerial directives that [Cockrell issued White];

(3) exercise sound management oversight rooted in strict, timely accountability with respect to those whom [White] supervise[d]; and

(4) [e]nsure strict compliance with the relevant regulations, rules, policies and standards attendant to [White's] position.

¶5.     On May 5, 2011, Cockrell issued a second warning letter to White about his lack of management oversight. The letter detailed a discussion that occurred on May 4, 2011, between Cockrell and White about White's "failure to exercise adequate management oversight which resulted in extremely poor attendance . . . and the resulting obligation of payment for excessive meals ordered." Cockrell stated that White failed to ensure that his staff had confirmed policy council members' participation as well as the HCHRA board members' participation. And, as a result, the HCHRA was required to pay for approximately thirty meals for persons who were not present, and two consultants were paid to address a group that did not include the necessary policy council members. Cockrell also referred to another instance where White's failure to ensure attendance at a meeting resulted in unnecessary expenditures. At the close of the letter, Cockrell informed White that his failures did not reflect positively on his provisional status.

¶6.     On May 20, 2011, Cockrell met with White and discussed his written performance appraisal, which Cockrell had completed as part of White's provisional status. The report indicated that White's performance was deficient in some areas and unsatisfactory in others. For example, the report stated White arrived twenty to thirty minutes late to work each day.

3

It also included complaints about White's "repeated instances in which the work product was not thorough, inaccurate, and often incomplete." Specifically, White would pass to Cockrell work done by White's staff without White "checking the work product or verifying the validity, accuracy or completeness of its contents." And during his six months of employment, he failed to recommend "a single idea or proposal for doing things differently or better."

¶7. That same day, Cockrell issued a memorandum to White informing him of his suspension without pay. Cockrell also stated that he had recommended to the board of directors that White be terminated from his position. In the memorandum, Cockrell referred to White's various offenses of the HCHRA policy manual, as well as the warning letters and performance appraisal.

¶8. As part of HCHRA procedure, the board of directors and the policy council had to vote on and finalize White's termination. On June 2, 2011, the board and the council voted to uphold Cockrell's recommendation to terminate White. Additional relevant facts will be discussed as necessary.

## STANDARD OF REVIEW

¶9. "We employ a de novo standard of review of a trial court's grant or denial of summary judgment and examine all the evidentiary matters before it . . . ." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show

4

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

¶10.    "The evidence is viewed in the light most favorable to the party opposing the motion." *Davis*, 869 So. 2d at 401 (¶10). "[A]n adverse party may not rest upon the mere allegations or denials of his pleadings, but his response . . . must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Further:

> [W]hen a party, opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987).

## DISCUSSION

### 1. The *McArn* Wrongful Discharge Claim

¶11.    Mississippi strictly adheres to the common law employment-at-will principle that "a contract for employment for an indefinite period may be terminated at the will of either party, whether the discharge is for any reason or no reason at all." *Buchanan v. Ameristar Casino Vicksburg Inc.*, 852 So. 2d 25, 26 (¶4) (Miss. 2003) (citing *McArn*, 626 So. 2d at 606). But in *McArn*, our supreme court created two independent tort actions based on "a narrow public policy exception to the employment at will doctrine":

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not

5

> barred by the employment at will doctrine from bringing action in tort for
> damages against his employer.

*McArn*, 626 So. 2d at 607.

¶12.    In his complaint, White stated that, during his six months with HCHRA, he questioned Cockrell about HCHRA's practices, "excessive" expenditures, and payments for services that were both a conflict of interest and illegal. White claimed that, as a result of his questioning, Cockrell "began a course of retaliation." During his deposition, White testified that the illegal acts he referred to in his complaint were contracts entered into between (1) HCHRA and Nita Thompson for training services; and (2) HCHRA and Rampant Development Corporation (James King) for a study of operations,[3] and Cockrell's request to White that he terminate certain employees at HCHRA. On appeal, White only disputes Cockrell's contracts with King.

¶13.    Cockrell entered into the first contract with King on December 21, 2009. King agreed to conduct desk audits to analyze the current operations at HCHRA — specifically the facility and field services and transportation services. The contract specified that King would "conduct interviews with the appropriate directors, supervisors and other related staff at the warehouse and other related locations, to develop and implement a restructure . . . [to] provide . . . more efficient onsite [s]upervision of the Department of Facilities and Field Services and the Department of Transportation." King agreed to begin the study on

---

[3] HCHRA entered two contracts with King — one in 2009 and another in 2010.

December 21, 2009, and have it finished no later than March 30, 2010. For a "full and complete satisfactory performance," he would be paid no more than $12,000. Cockrell and King entered into a second contract on April, 1, 2010. The terms of the contract were nearly identical to the first, with the exception of the dates and payment amount. The second contract stated King would begin his study on April 1, 2010, with December 31, 2010, as the date of completion. The contract further specified that Cockrell would pay King no more than $48,000. Like the first contract, payment was contingent on a "full and complete satisfactory performance." Both contracts were signed by Cockrell, King, and two witnesses. The record shows that King submitted multiple pages of documents, letters, and reports to the HCHRA detailing the results of his studies. Ultimately, the HCHRA found King's work satisfactory and paid him accordingly.

¶14.    White oversaw the Department of Facilities and Field Services, where King had agreed to perform a warehouse study. In his deposition, White stated that he did not know about King or any contract until King called to introduce himself and set up a meeting. At that time, he thought King was one of Cockrell's "external partner[s]." White testified that he later found out about the warehouse study from the warehouse manager, Roy Brown. According to White, when he approached Cockrell about the warehouse study, Cockrell said he would give him more information on it, but never did. When asked what was illegal about the contract, White replied, "What's illegal about it is you have a facilities director [(Brown)] who is capable of providing some of these services." White testified that he had not seen the

7

actual contracts until discovery and did not know what services King had rendered. He also testified that he verbally reported his suspicions and concerns of illegal activity to Cockrell but no one else.

¶15. In *Hammons v. Fleetwood Homes of Mississippi Inc.*, 907 So. 2d 357, 360 (¶11) (Miss. Ct. App. 2005), this Court held that an employee must prove that he complained of employer acts that "warrant the imposition of criminal penalties, as opposed to mere civil penalties," which caused his termination. White made no such claim in trial court. But on appeal, White claims that there is a genuine issue of material fact as to whether he was terminated for "investigating and raising concerns about actions taken by Cockrell that would constitute violations of the law, subjecting Cockrell to criminal penalties." Specifically, he states in his brief that he "questioned the warehouse study, which when ferreted out, could constitute a misuse of federal funds." White further claims that Cockrell's contract with King violated two federal statutes: (1) 18 U.S.C. § 1001 (2012), which states that any person under the jurisdiction of the executive, legislative, or judicial branch of the government of the United States, who knowingly and willfully makes a false statement or misrepresentation, is subject to a fine and imprisonment; and (2) 18 U.S.C. § 287 (2012), which states that "[w]hoever makes or presents to any person . . . or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent," is subject to a fine and imprisonment.

¶16. This Court "should only review orders granting summary judgment by examining the

evidence before the trial court and not consider new evidence." *Mitchell v. Nelson*, 830 So. 2d 635, 640 (¶14) (Miss. 2002). "[A] mere good-faith belief that employer activity is criminally illegal without showing the activity to be actually criminal in nature is insufficient to provide recourse to a discharged plaintiff under the *McArn* exception." *Kyle v. Circus Circus Miss. Inc.*, No. 2:09CV014-P-S, 2010 WL 2539576, at \*4 (N.D. Miss. June 15, 2010). White must state with specificity the allegedly illegal conduct, point to evidence of record to support his allegations, and describe how that conduct violated a criminal statute. *Id*. He has not.

¶17.    After careful review of the record, we find White presented no evidence in the trial court to create genuine issues of material fact as to whether Cockrell's contracts with King were illegal and whether Cockrell fired White because he questioned the contracts. Further, White testified that he failed to report any of Cockrell's allegedly illegal activity to his employer or anyone else. *See McArn*, 626 So. 2d at 606. We affirm the trial court's grant of summary judgment in favor of the HCHRA and Cockrell.

### 2. Remaining Claims

¶18.    HCHRA and Cockrell only moved for summary judgment on two of White's claims — the *McArn* claim and the breach-of-contract claim. The trial court recognized White's allegations of other causes of action, specifically conspiracy, infliction of emotional distress, libel, and slander. The trial court found that White had failed to produce any evidence to support these other claims and granted summary judgment on them sua sponte. On appeal,

9

HCHRA and Cockrell admit White pled these causes of action.

¶19. Since HCHRA and Cockrell moved for partial summary judgment on two specific causes of action, White was not required to produce evidence to support his other claims, nor did the trial court have authority to address them. In *Byrd v. Woods*, 90 So. 3d 666, 671 (¶23) (Miss. Ct. App. 2012), this Court held: "[A] a court errs in granting summary judgment sua sponte on an issue not raised in the moving party's motion for summary judgment. The opposing party is entitled to notice and an opportunity to respond." (Citations omitted); *see also* M.R.C.P. 56(e). Summary judgment cannot be granted on grounds not raised and properly supported in the summary judgment motion; the plaintiff is only required to produce evidence after the defendant has made a prima facie showing that it is entitled to summary judgment. *Moore v. M&M Logging Inc.*, 51 So. 3d 216, 219 (¶6) (Miss. Ct. App. 2010). Therefore, we reverse the grant of summary judgment on White's remaining claims.

¶20. **THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED IN PART AND REVERSED IN PART, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEES.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, JAMES AND WILSON, JJ., CONCUR.**