# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-IA-00020-SCT

*PUBLIC SERVICE COMMISSION OF YAZOO
CITY AND RICHIE MOORE*

*v.*

*PATRICIA WRIGHT*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/2022 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS-BLACKMON |
| TRIAL COURT ATTORNEYS: | REBECCA B. COWAN |
| | LISA WILLIAMS McKAY |
| | ALTON EARL PETERSON |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | LISA WILLIAMS McKAY |
| ATTORNEY FOR APPELLEE: | ALTON EARL PETERSON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 08/15/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., COLEMAN AND BEAM, JJ.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Patricia Wright filed a complaint against the Public Service Commission of Yazoo City (the PSC) alleging that her termination from the PSC was unlawful under the public policy exception to the employment at will doctrine. After the trial court's denial of summary judgment in favor of Wright, the PSC filed a petition for interlocutory appeal and argued that Wright failed to identify any activity that her supervisor was engaging in that could lead to criminal penalties. Because Wright failed to identify conduct that would warrant the imposition of criminal penalties, we reverse the trial court's denial of summary judgment and

render judgment in favor of the PSC.

## FACTS AND PROCEDURAL HISTORY

¶2.     Wright was employed by the PSC from August 2014 until November 2018. On November 5, 2018, the PSC fired Wright for "[f]alsifying documentation regarding reconnecting a customer for non-pay . . . ."[1] Wright appealed her termination to the PSC Board. On January 9, 2019, the Board upheld her termination.

¶3.     On November 19, 2020, Wright filed suit against the PSC and its general manager, Richie Moore, in his official capacity, and alleged that the PSC had unlawfully terminated her in retaliation for refusing to participate in illegal activities. Wright requested lost wages and benefits, compensatory damages, punitive damages, and costs.

¶4.     Attached to the complaint was a bill charged to Lawanda Streeter with a past due amount of more than four thousand dollars. A handwritten note on the bill stated "Cut off @ 10:41 10/31/18 Dante."[2] A second handwritten note stated "*Cut back on until 11/1/18 per Mike [Wilson]*." Wilson was Wright's supervisor. Wright testified that, on November 1, 2018, Streeter had arrived at the PSC office and had asked to see Wilson. Wright informed Streeter that Wilson was not there. According to Wright, Streeter stated that Wilson had asked to her to "bring in whatever she could bring in on the first, and he promised her that

---

[1]The employee handbook lists as a Group III Offense: "Falsifying any records, including but not limited to, vouchers, reports, insurance claims, time records, leave records or other PSC documents . . . ." It further stated that "[t]he normal disciplinary action for a Group III offense is the issuance of a Written Notice and termination."

[2]Wright testified that Dante Williams was a meter reader for the PSC.

her services would not be interrupted." Streeter then tendered $100 toward her past due bill, and Wright accepted the money. Wright explained:

> And when you receive a payment from a customer when the services had been cut off, actually [Wilson] should have been the one that did that pay put back. But because it was not done and I was receiving money from her, I went head on and did the paid put back.

¶5. Wright testified that Brenda Haralson called her later that day and referenced the cut-off notice and that the notice said "paid put back . . . per Mike." Haralson was concerned because Wilson had not been in the office that day. Wright stated that she was busy at that time and could not remember why the notice was there. Wright later informed Haralson that she may have entered the wrong customer's account number. She stated that she would delete the notice and proceeded to do so. Haralson told Wright not to delete the notice, and Wright responded, "[w]ell, I've done it now."

¶6. In response to Wright's complaint, the PSC filed a motion for summary judgment and argued that Wright was an at-will employee of the PSC when she was terminated and that her termination was not against the public policy exception to the at-will employee rule.

¶7. Additionally, Moore submitted an affidavit stating that the PSC denied that Wright was terminated because she refused to participate in any illegal activity, that Wright did not have any written contract with the PSC, and that the PSC's employee handbook expressly stated that the handbook is not to be considered a contract of employment, whether express or implied.

¶8. Wright opposed the motion for summary judgment and argued that her pleadings and

3

deposition established a genuine issue of material fact regarding whether she was fired for refusing to participate in an illegal act. She alleged that her supervisor had been taking late charges off of customers' bills and that he was "just not being fair, you know, that's—turning, having people's lights turned back on when they were turned off, a large past due amount."

¶9.    The trial court denied the PSC's motion for summary judgment. At the conclusion of the summary judgment hearing, the trial judge stated, "[b]ut the fact that I've been sitting up here, going back and forth in my mind, trying to figure out why she was terminated, tells me that there's some genuine issue of material fact. And that is, why she was terminated?" The trial judge then stated that "[w]hether or not she understood what falsifying documents was or is and whether or not she understood if she was being asked to do that also, that's a question that, in the purview of the jury, because I find that it is a genuine—basically, the essence of the case, the reason that she was fired."

¶10.    This Court granted the PSC's petition for interlocutory appeal. The PSC raised the following four issues, verbatim:

1.    Did [Wright] concede in the trial court that, absent an application of the first public policy exception to the termination of an at-will employee set forth in *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993), she was an employee at-will with the [PSC] when she was terminated in November 2019?

2.    Did Wright admit during her deposition taken in this matter that her termination from employment with the PSC did not fall with in the first *McArn* public policy exception?

4

3. Did Wright, while responding to the [PSC's] Motion for Summary Judgment, fail to "describe how [her supervisor's] alleged conduct violated a particular criminal statute" that carried with it the imposition of criminal penalties?

4. Did the trial court impermissibly rely on Wright's belief or opinion that her PSC supervisor was committing illegal conduct while denying the [PSC]'s motion for summary judgment?

¶11. Because Wright does not contest that she was an at-will employee, the first issue is moot.

**ANALYSIS**

¶12. The denial of a motion for summary judgment is reviewed de novo, and this Court "view[s] all facts in the light most favorable to the party opposing the motion . . . ." *Galle v. Isle of Capri Casinos, Inc.*, 180 So. 3d 619, 622 (Miss. 2015) (citing *Conrod v. Holder*, 825 So. 2d 16, 18 (Miss. 2002)). "[A] motion for summary judgment should be denied unless the trial court finds beyond any reasonable doubt that the plaintiff would be unable to prove any facts to support his/her claim." *Robinson v. Cobb*, 763 So. 2d 883, 886 (Miss. 2000) (internal quotation marks omitted) (quoting *Miss. Dep't of Wildlife, Fisheries, & Parks v. Miss. Wildlife Enf't Officers' Ass'n, Inc.*, 740 So. 2d 925, 930 (Miss. 1999)). "On a summary judgment motion . . . the moving party, 'bears the burden of *persuading* the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, [it] is entitled to judgment as a matter of law.'" *Thomas v. Boyd Biloxi LLC*, 360 So. 3d 204, 210 (Miss. 2023) (second alteration in original) (quoting *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (Miss. 2013)). The opponent, "meanwhile, 'carries the burden of

5

*producing* sufficient evidence of the essential elements of her claim at the summary-judgment stage, as she would carry the burden of production at trial.'" *Id.* (quoting *Karpinsky*, 109 So. 3d at 89).

¶13.  The PSC argues that Wright was an at-will employee who could have been terminated for any reason and that Wright's deposition testimony established that no genuine issue of material fact existed to support her claim that she was terminated for refusal to participate in unlawful activities. "In Mississippi—when there is no written employment contract—the employment relationship is at-will, which means that 'an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.'"[3] *Galle*, 180 So. 3d at 622 (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 986 (Miss. 2004)). There is a public policy exception to the employment at will doctrine: "whether there is a written contract or not: (1) an employee who refuses to participate in an illegal act as in *Laws*[4] shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer . . . ." *McArn*, 626 So. 2d at 607.

¶14.  This Court has explained that "[a] *McArn* claim alleging wrongful discharge in violation of public policy is based on an employer's duty not to thwart the public interest by

[3]Wright does not dispute that there was no written contract of employment.

[4]There, a branch manager for an insurance company alleged that his employment was unlawfully terminated because he refused to participate in insurance policy packing schemes. *Laws v. Aetna Fin. Co.*, 667 F. Supp. 342 (N.D. Miss. 1987).

terminating employees for speaking the truth." *Galle*, 180 So. 3d at 622 (internal quotation marks omitted) (quoting *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 220 (Miss. 2015)). "The public policy exception protects an employee from being forced to choose between committing a crime and losing his or her job." *Id.* at 623 (quoting *Coors Brewing Co. v. Floyd*, 978 P. 2d 663, 667 (Colo. 1999)). This Court has continually referred to the public policy exception as "narrow." *Spiers v. Oak Grove Credit, LLC*, 328 So. 3d 645, 655 (Miss. 2021) (internal quotation marks omitted) (quoting *S. Farm Bureau Life Ins. Co. v. Thomas*, 299 So. 3d 752, 757 (Miss. 2020)).

**I.     Whether proof of an illegal act by an employer is required to defeat summary judgment.**

¶15.    Wright's complaint stated that the PSC unlawfully terminated her in retaliation for refusing to participate in illegal activities. The PSC argues that Wright failed to cite any specific criminal statute with accompanying penalties that prohibited her supervisor's conduct. During Wright's deposition, she testified to the following:

> Q:    In your Complaint you allege that the reason why you were fired or terminated was that you refused to participate in illegal activities at the PSC. Can you tell me about that?
>
> A:    There were things that my supervisor there was doing.
>
> Q:    Now, who's your supervisor?
>
> A:    Michael Wilson.
>
> Q:    Okay. And what was he doing?
>
> A:    Going in, taking off late charges on customers. I mean, just not being

7

fair, you know, that's—turning, having people's lights turned back on when they were turned off, a large past due amount.

Q:     Okay. And how did you refuse to participate in that?

A:     How did I refuse?

Q:     Um-hum. Or did you just know about it?

A:     I knew about it and, you know . . .

Q:     Okay. But was there a point in time when Mr. Wilson wanted you to do something and you said no?

A:     No.

Q:     That you felt like was illegal? Okay. You're—where are you currently employed?

. . . .

Q:     Okay. And you were talking about the different activities that you observed at the PSC, and I want to make sure I got this clear: No one asked you to do something wrong and you said no, and then you got fired. If I understand you correctly, you were just summarizing what you observed while you were working there?

A:     Yes.

¶16.   The PSC, in a memorandum in support of its motion for summary judgment, argued that Wright had failed to describe any illegal activity that existed at the PSC that was a violation of a criminal statute or law. During the hearing for the summary judgment motion, counsel for the PSC again argued that Wright had failed to specify what illegal activities she was terminated for refusing to participate in. Wright's counsel responded that, in Wright's opinion, the illegal activities were Wilson's actions, namely "[g]oing in, taking off late

8

charges on customers. I mean, just not being fair, you know, that's—turning, having people's lights turned back on when they were turned off, a large past due amount." Counsel for the PSC pointed out that Wright's counsel had not articulated what criminal law or statute had been violated at the PSC that Wright was asked to participate in.

¶17.    The trial court gave counsel for Wright an opportunity to respond and specifically asked counsel to elaborate on how she was terminated for a violation of public policy. Counsel responded:

> The illegal activity—well the Public Service Commission stated reason for Ms. Wright's termination was because she falsified documents. Now that is the actual reason that they provided her in writing. Now in Ms. Wright's opinion, going in and actually removing these late charges as though they had been paid when they were not, and turning people's lights back on or having the lights turned on when they had large balances that hadn't been paid—which would have her to falsify certain documents and that was the illegality that she was faced with doing, either falsifying these documents, indicating that these people had paid monies when they had not been paid—
>
> . . . .
>
> And she refused to do so, Your Honor.

¶18.    Again, *McArn* provides two limited public policy exceptions to Mississippi's employment at will doctrine:

> (1) an employee who refuses to participate in an illegal act as in *Laws* shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

*McArn*, 626 So. 2d at 607.

¶19. Under the first *McArn* exception, the required elements can reasonably be articulated as: (1) plaintiff was an employee of the defendant, (2) *an illegal act* by the employer, and (3) plaintiff was terminated because of his or her refusal to commit the named unlawful act for the employer. Thus, it is clear that an act by an employer that is actually illegal is required. This is supported by this Court's holding that "[a]pplicability of the exception does not require that a crime has already been committed, but it does require that the acts complained of warrant the imposition of criminal penalties, as opposed to mere civil penalties." ***Roop v. S. Pharms. Corp.***, 188 So. 3d 1179, 1185 (Miss. 2016) (internal quotation marks omitted) (quoting ***Hammons v. Fleetwood Homes of Miss., Inc.***, 907 So. 2d 357, 360 (Miss. Ct. App. 2004)).

¶20. Although Wright's attorney testified that she believed her supervisor's actions were illegal, Wright failed to cite before the trial court any authority supporting that his conduct would warrant the imposition of criminal penalties. Although not mandatory authority, the Court of Appeals has stated, "in response to a motion for summary judgment, the plaintiff 'must state with specificity the allegedly illegal conduct, point to evidence of record to support his allegations, and describe how that conduct violated a criminal statute.'" ***Est. of Turner v. Town Pharmacy and Gifts, LLC***, 310 So. 3d 1229, 1234 (Miss. Ct. App. 2021) (quoting ***White v. Cockrell***, 190 So. 3d 878, 883 (Miss. Ct. App. 2004)). The PSC specifically argued before the trial court that Wright had failed to provide any citations to support her argument that Wilson's actions were illegal. Because Wright did not provide

such support before the trial court, she failed to meet her burden of showing a genuine issue of material fact regarding whether she could sue for wrongful termination under *McArn*.

¶21. Wright argues in her appellate brief, for the first time, that Mississippi law prohibits any person within a public utility, such as the PSC, from falsifying records to the Mississippi Public Service Commission. Under Mississippi Code Section 77-3-81(2),

> Any person who knowingly or intentionally gives false testimony at any hearing held by the commission, a commissioner or a hearing examiner, or who knowingly or intentionally makes false reports to the commission, when the testimony and reports are required by this article or any unlawful order or rule of the commission, or who knowingly or intentionally makes any false entries upon the books or records of any public utility subject to review by the commission, or who knowingly or intentionally makes or preserves any false or misleading vouchers, memoranda or records showing the nature of, or purpose for, the disbursement of funds of such public utilities, shall be deemed guilty of a felony and, upon conviction, shall be committed to the custody of the State Department of Corrections for a period of not less than one (1) year nor more than ten (10) years for every offense.

Miss. Code Ann. § 77-3-81(2) (Rev. 2018). "The Court does 'not consider arguments raised for the first time on appeal.'" *Stratton v. McKey*, 384 So. 3d 499, 503 (Miss. 2024) (quoting *Bay Point Props., Inc. v. Miss. Transp. Comm'n*, 201 So. 3d 1046, 1055 (Miss. 2016)). Further, Wright does not allege that Wilson falsified any reports to the Mississippi Public Service Commission. Therefore, this argument lacks merit.

¶22. Wright also argues that the PSC failed to meet its initial burden at the summary judgment stage. Wright uses *Smith v. Malouf*, 597 So. 2d 1299, 1302 (Miss. 1992), in which a proponent for summary judgment had relied on a chancery court judgment that subsequently was reversed by this Court to support her argument. This Court then reversed

11

the chancery court's grant of summary judgment and found that "since [proponent] has offered no probative evidence in support of his motion for summary judgment, the risk of persuasion never shifted to [the opponent]." *Id.* at 1302-03 (citing ***Brown v. Credit Ctr., Inc.***, 444 So. 2d 358, 364 (Miss. 1983)).

¶23.    This argument lacks merit. The PSC argued before the trial court that Wright failed to provide authority to support her subjective belief that her supervisor's acts were illegal. An act that is actually illegal and that warrants the imposition of criminal penalties is a required element to support Wright's case. Therefore, the burden of proof shifted to Wright to support her argument with relevant authority. Wright failed to do so.

¶24.    Because Wright failed to support her ***McArn*** argument with evidence showing how her supervisor's conduct violated a criminal statute, the trial court erred by denying the PSC's motion for summary judgment.

II.    **Whether Wright was terminated because of her refusal to commit the named unlawful act for the employer.**

¶25.    In order to fall under the ***McArn*** exception, Wright also must have been terminated because she refused to participate in the specified illegal act.

¶26.    Wright stated that, in her opinion, her supervisor was illegally taking late charges off of customers' accounts and turning lights back on for customers who had large past due bills. Yet Wright further testified that Streeter had tendered one hundred dollars toward her past due bill of more than four thousand dollars, that she had accepted the money, and that she had created a work order to turn Streeter's bill back on. Therefore, if Wilson was illegally

12

turning customers' lights back on, Wright's testimony does not support her assertion that she was fired for refusing to participate in those activities.

¶27. Moreover, when counsel for the PSC asked how Wright refused to participate in the alleged illegal activities, she responded:

A:    How did I refuse?

Q:    Um-hum. Or did you just know about it?

A:    I knew about it and, you know . . .

Q:    Okay. But was there a point in time when Mr. Wilson wanted you to do something and you said no?

A:    No.

Q:    That you felt like was illegal? Okay. You're—where are you currently employed?

¶28. Wright argued that she was not allowed to finish her answer and that her deposition testimony fell short of eliminating all factual disputes. But once the PSC argued that Wright's testimony indicated that she had not refused to perform any activity at Wilson's request, it was Wright's burden to produce sufficient evidence of the essential elements in support of her claim. Again, Wright failed to do so.

### III. Whether Wright's remaining deposition testimony created a genuine issue of material fact.

¶29. During her deposition, Wright testified that she felt like she was not part of the office clique and stated that people in the office did not like her. She also testified that there was wrongdoing in the office and that money would sometimes be missing from her drawer.

13

Wright specifically stated, however, that no drawer discrepancy resulted in her termination. Also, no drawer discrepancy was referenced in her complaint, and Wright's testimony did not clearly accuse any coworker of theft. Further, when Wright was asked to specify the activity that she refused to participate in, she specifically stated that it was her supervisor's actions in taking off late charges and turning customers' lights back on. Therefore, Wright's remaining deposition testimony also did not show a genuine issue of material fact.

## CONCLUSION

¶30. Because Wright failed to provide sufficient evidence of the essential elements of her claim at the summary judgment stage, we reverse the trial court's denial of summary judgment and render judgment in favor of the PSC.

¶31. **REVERSED AND RENDERED.**

**RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**