# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01614-COA

**THE ESTATE OF ROBYN TURNER**                                          **APPELLANT**

**v.**

**TOWN PHARMACY AND GIFTS, LLC**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/01/2019 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MITCHELL PAUL HASENKAMPF |
| | KAREN ELIZABETH FUTCH |
| ATTORNEY FOR APPELLEE: | RUSSELL SCOTT MANNING |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 01/19/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.

### WILSON, P.J., FOR THE COURT:

¶1.     Under *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603, 607 (Miss. 1993), and its progeny, an employee may sue her employer for damages if she is fired for reporting a criminal act of her employer or a fellow employee to her employer or anyone else. Robyn Turner brought a *McArn* claim against her former employer, Town Pharmacy and Gifts LLC. Turner's employment as Town Pharmacy's pharmacist-in-charge ended after an argument with one of the pharmacy's owners. Town Pharmacy maintains that Turner resigned, but Turner alleges that she was fired because she reported that another pharmacist had illegally dispensed a controlled substance to a customer without a current prescription.

¶2.    The circuit court granted summary judgment in favor of Town Pharmacy because (1) Turner failed to show that the conduct she reported was criminal, (2) Turner resigned and was not fired, and (3) even if Turner was fired, there is no evidence that her employment ended because she reported a criminal act.  We affirm because Town Pharmacy was entitled to summary judgment on the first of these grounds.[1]

### FACTS AND PROCEDURAL HISTORY

¶3.    In early 2017, Tommy Turfitt and his mother Laurie were preparing to open a new pharmacy and gift store, Town Pharmacy and Gifts in Bay St. Louis.  Tommy hired Robyn Turner to be Town Pharmacy's pharmacist-in-charge.  Turner had worked with or for the Turfitts at one or more pharmacies in the past.  Town Pharmacy opened in April 2017.  From the beginning, Turner's relationships with her coworkers and the Turfitts were strained.  Turner did not get along with Mindy Yarborough, a pharmacy technician.  At one point, Turner told Yarborough that one of them was going to have to leave.

¶4.    Turner also had a difficult relationship with the Turfitts.  She did not like how they ran the pharmacy, and she thought they infringed on her authority as the pharmacist-in-charge. Turner wanted "full reign" over Yarborough and Jerry Segura, the relief pharmacist. But she testified that Laurie told her that Yarborough was "not going anywhere" and that Turner should "be an adult and deal with it."  Turner felt that she could not speak frankly with the Turfitts, and she claims that Laurie criticized and insulted her.  Turner testified that on her last day at work, Laurie yelled at her that "people hate[d] [her]" everywhere she

---

[1] Because we affirm based on the first ground, it is unnecessary to address the remaining grounds for the circuit court's decision.

worked and that "nobody like[d] [her]."

¶5.	Turner admitted that her relationship with the Turfitts was "rocky," but she blamed the Turfitts. In May 2017, Tommy suggested that Turner should be thankful that he had hired her given the circumstances under which she had quit on him in the past. The next day, Turner sent Tommy a four-page handwritten letter in which she complained about Laurie's hostility toward her and the speed with which she had been required to set up the pharmacy. Turner concluded the letter by stating that she could easily find work at other pharmacies if she felt dissatisfied at Town Pharmacy. Several weeks later, Laurie sent Tommy a text message stating that Turner was "a very sick person" and "too negative." Laurie stated that she had "been praying for [Turner]" and had sympathy for her but that Turner was "not what [their] business need[ed]." Tommy agreed with Laurie, but he took no action regarding Turner's employment at that time.

¶6.	Around August 2017, Turner's mother suffered a stroke, and Turner was absent from work to help care for her. Turner offered to resign if her absences were becoming a problem. However, the Turfitts were supportive of Turner. Tommy told her to take care of her mother and reassured her that her job was safe.

¶7.	On September 2, 2017, the Saturday before Labor Day, the pharmacy closed at 2 p.m., but the gift shop remained open. Around 3:30 p.m., a customer called and asked for Segura, but Laurie told the customer that Segura had left and that the pharmacy was closed for the day. Shortly thereafter, the customer arrived at the store and told Laurie that Segura was on his way to the pharmacy to fill a prescription for the customer. Segura arrived and took the

3

customer to the pharmacy, and both the customer and Segura left soon after.

¶8. The pharmacy remained closed until Tuesday, September 5. When Turner arrived at work around 9:15 a.m. on Tuesday, she found a prescription for diazepam[2] dated that day with a note to "take four tablets out" of the prescription. Turner thought the note was odd. She also thought it was unusual to have already received a prescription dated that morning. She asked Tommy what he knew about the prescription. Tommy did not know anything about it and told her to ask Segura about it. However, Turner chose not to talk to Segura. Turner's reasons for not talking to Segura remain unclear. In her deposition, she said that "one of the reasons" she decided not to talk to Segura was that she "did not have the authority to . . . fire" him.

¶9. Segura later told Tommy that the customer was an elderly woman suffering from alcohol withdrawals and that he dispensed diazepam to her pursuant to her doctor's instructions. Segura submitted to a deposition by written questions, *see* M.R.C.P. 31, but his answers provided no details about the incident.[3] All that can be inferred is that Segura dispensed four pills to the woman on September 2 pursuant to an oral prescription from her

---

[2] Diazepam is a schedule IV controlled substance. 21 C.F.R. § 1308.14(b)(17); Miss. Code Ann. § 41-29-119(b)(16) (Rev. 2018).

[3] Segura retired sometime after Turner's employment at Town Pharmacy ended. According to Turner's attorney, Segura "dodged service" of a subpoena and said "he was leaving town and . . . would fight it." Segura agreed to a deposition by written questions. Segura did not dispute that he opened the pharmacy and served the customer. In response to the question whether he denied dispensing four diazepam pills to the customer "without [the customer] having a current prescription," Segura stated, "Any and all actions I took were under the orders of the physician. I was in communication with the doctor." Segura stated that the "Hippocratic Oath" prevented him from "go[ing] into detail" about the medicine he dispensed to the customer.

doctor and that the pharmacy later received a written prescription from the doctor.

¶10.    Turner alleges that she was concerned that Segura had dispensed pills without a prescription in violation of state and federal law.  However, she did not express this concern to anyone.  As stated above, she ignored Tommy's instruction to discuss the incident with Segura.  In fact, she never discussed the incident with Segura.  Between September 5 and September 19, Turner exchanged a number of friendly text messages with Segura and asked him to cover shifts for her at the pharmacy, but she never mentioned her alleged concern regarding the diazepam pills.

¶11.    On September 19, Turner met with Tommy in Tommy's office.  Turner had printed out and highlighted certain Board of Pharmacy regulations that she wanted to discuss with Tommy.  It is not clear from Turner's testimony whether she ever specifically mentioned Segura or the September 2 incident during the meeting in Tommy's office.  Tommy inferred that Turner was accusing him of violating the regulations by "circumventing" her authority as the pharmacist-in-charge.  Tommy inferred that this was, "apparently, about" the September 2 incident.  However, Tommy noted that two weeks earlier, he had told Turner to discuss the incident with Segura because he (i.e., Tommy) did not know anything about it.  Yet Turner still had not discussed the incident with Segura.

¶12.    Turner testified that her mention of "circumvention . . . was the trigger point for" Tommy and that the discussion "did not continue amicably" after she raised the issue.  She testified that there were "some other issues as well, and . . . it all just blew up."  She stated that the discussion quickly devolved into "an argument."  Tommy "was angry," and she "was

5

upset." Turner testified that Tommy insulted her and complained about things that she "had done or not done" and that their argument ultimately "had nothing to do with" the Board of Pharmacy regulations or the September 2 incident involving Segura.

¶13. Turner and Tommy have different recollections of how the argument ended. According to Turner, she said, "If y'all don't want me here, just let me know." Tommy responded, "I think that would be best," and then he said, "I didn't see that coming." According to Turner, she then stated, "Tommy, I did not make that statement because I want to leave, because I intend to leave, or I have plans to leave. I made that statement because if you all do not like me because I am enforcing things that have to be done, just let me know." According to Turner, nothing further was said, but she finished her shift and left the pharmacy on September 19 believing that she was still employed.

¶14. According to Tommy, Turner stated, "If you and your mother don't want me here then I quit." Tommy responded that Turner's resignation was acceptable. Turner then finished her shift and went home.

¶15. Turner was not at work the next two days. She had previously asked Segura to cover her shifts, and Segura had agreed. Turner returned to the pharmacy on September 22. According to Turner, when she arrived at the pharmacy, Tommy informed her that he had "accepted [her] resignation," that she could leave immediately or finish her shift, and that September 22 would be her last day.[4] Turner then left the pharmacy.

¶16. On December 22, Turner filed suit against Town Pharmacy in the Hancock County

---

[4] Tommy says that he told Turner she could work for two more weeks.

Circuit Court, alleging wrongful termination. Turner alleged that Tommy fired her for reporting and refusing to participate in the illegal distribution of controlled substances to a customer without a current prescription. After discovery, Town Pharmacy moved for summary judgment. The circuit court granted Town Pharmacy's motion after concluding that (1) Turner failed to produce any evidence that Segura engaged in criminal conduct;[5] (2) Turner resigned and was not fired; and (3) even if "there was some misunderstanding about [Turner] resigning, there is no proof that her employment ended" because she reported an allegedly criminal act. Turner filed a notice of appeal.

**ANALYSIS**

¶17. We review the grant or denial of a motion for summary judgment motion de novo, viewing the evidence in the light most favorable to the non-moving party. *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1044 (¶16) (Miss. 2015). "[Summary] judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The non-moving party "may not rest upon the mere allegations or denials

---

[5] Turner argues that the circuit court erred by addressing this issue because Town Pharmacy raised the issue in its rebuttal memorandum in support of its motion for summary judgment. However, the circuit court allowed Turner to file a sur-rebuttal and supplement the record to address the issue. Because the circuit court granted Turner an opportunity to respond, we conclude that Turner did not suffer any "unfair prejudice" and that the circuit court did not err by addressing the issue. *See Thornton v. Big M Transp. Co.*, 146 So. 3d 393, 398 (¶¶19-20) (Miss. Ct. App. 2014) (holding that defendant's failure to comply with Rule 4.03 of the Uniform Rules of Circuit and County Court Practice (subsequently renumbered as Rule 4.02) did not require reversal where the plaintiff had an opportunity to respond to the motion and did not suffer any "unfair prejudice").

of his [or her] pleadings, but, by affidavits or as otherwise provided by [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." M.R.C.P. 56(e). Thus, pursuant to Rule 56, "the court *must* grant summary judgment unless—as to each material issue of disputed fact raised by the moving party—the record demonstrates at least the minimum quantum of evidence sufficient to justify a determination in favor of the non-moving party by a reasonable juror." *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1274 (¶19) (Miss. 2007) (footnotes omitted).

¶18. "Mississippi adheres to the employment at will doctrine, which states absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible." *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 986 (¶46) (Miss. 2004) (quotation marks omitted). However, our Supreme Court has recognized "a narrow public policy exception to the employment at will doctrine": an employee may sue her employer in tort for damages if she is fired for (1) refusing to participate in an illegal act or (2) reporting illegal acts of her employer to her employer or anyone else. *McArn*, 626 So. 2d at 607.[6]

¶19. *McArn*'s exception for whistleblowers is subject to important limitations. It "only appl[ies] where the activity complained of is actually illegal." *Obene v. Jackson State Univ.*,

---

[6] More recently, the Supreme Court has held that an employee may sue for wrongful discharge if he is fired for storing a firearm inside a locked vehicle at work. *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 854 (¶20) (Miss. 2016). The Court's holding was based on a statute that specifically forbids an employer from maintaining a rule or policy that prohibits employees from storing a firearm inside a locked vehicle. *Id.* at 853-54 (¶¶18-20) (citing Miss. Code Ann. § 45-9-55 (Rev. 2015)).

233 So. 3d 872, 876 (¶13) (Miss. Ct. App. 2017), *cert. denied*, 233 So. 3d 820 (Miss. 2018).

Therefore, "[a] plaintiff's subjective belief that the acts reported were illegal does not satisfy

*McArn*." *Gray v. Town of Terry*, 196 So. 3d 211, 218 (¶23) (Miss. Ct. App. 2016) (quoting

*McGrath v. Empire Inv. Holdings*, No. 1:11-CV-209-A-S, 2013 WL 85205, at \*4 (N.D. Miss.

Jan. 7, 2013)). In addition, the exception only applies if "the acts complained of warrant the

imposition of *criminal* penalties, as opposed to mere civil penalties." *Roop v. S. Pharms.*

*Corp.*, 188 So. 3d 1179, 1185 (¶17) (Miss. 2016) (emphasis added) (quoting *Hammons v.*

*Fleetwood Homes of Miss. Inc.*, 907 So. 2d 357, 360 (¶11) (Miss. Ct. App. 2004)). Thus, in

response to a motion for summary judgment, the plaintiff "must state with specificity the

allegedly illegal conduct, point to evidence of record to support his allegations, and describe

how that conduct violated a criminal statute." *White v. Cockrell*, 190 So. 3d 878, 883 (¶16)

(Miss. Ct. App. 2015).

¶20. Turner alleges that Segura violated federal law by dispensing a schedule IV controlled

substance. *See* 21 U.S.C. § 841. However, it is lawful for a licensed pharmacist such as

Segura to dispense a schedule IV controlled substance such as diazepam pursuant to a valid

written *or oral* prescription from a doctor.[7] A pharmacist may dispense such a medicine "(i)

upon a written prescription of a practitioner licensed by law to administer such drug, or (ii)

upon an oral prescription of such practitioner which is reduced promptly to writing and filed

by the pharmacist, or (iii) by refilling any such written or oral prescription if such refilling

---

[7] *See* 21 U.S.C. § 829(b) (providing that a pharmacist may only dispense a schedule IV controlled substance pursuant to "a written or oral prescription in conformity with section 503(b) of [the Federal Food, Drug, and Cosmetic] Act," 21 U.S.C. § 353(b)).

is authorized by the prescriber either in the original prescription or by oral order which is reduced promptly to writing and filed by the pharmacist." 21 U.S.C. § 353(b); *see also* Miss. Code Ann. § 41-29-137(b) (stating that a Schedule IV controlled substance "shall not be dispensed without a written or oral valid prescription of a practitioner").

¶21. In this case, Turner presented little evidence of what occurred on September 2. The evidence in the record tends to show that Segura dispensed four diazepam pills to a customer on September 2 based on an oral prescription from the customer's doctor. The evidence also shows that the prescription was reduced to writing, as Turner testified that there was a written prescription for the customer when the pharmacy reopened on September 5. As the circuit court noted during the summary judgment hearing, Turner was unable to establish any other facts about the incident. Turner's lack of evidence is due in part to her own failure to discuss the incident with Segura. As discussed above, it is undisputed that Tommy instructed Turner, as the pharmacist-in-charge, to discuss the issue with Segura. However, Turner made a deliberate decision not to discuss the issue with Segura, even though she continued to talk to him about other matters, including asking him to cover shifts for her. In addition, Turner failed to subpoena Segura for an oral deposition. Nor did she depose or obtain an affidavit from the prescribing doctor or the customer. As a result, the only evidence in the record tends to show that Segura dispensed four pills pursuant to an oral prescription and that the prescription was subsequently reduced to writing.

¶22. Turner argues that Segura illegally dispensed diazepam on September 2 because the doctor's oral prescription was not "reduced promptly to writing," as required by law. 21

U.S.C. § 353(b).[8]  However, as the circuit court noted, the pharmacy received a written prescription by the time it opened the next business day.  Turner has provided no authority that supports her claim that this was not sufficiently prompt—or that a delay until the next business day would support *criminal* charges against Segura.

¶23.    Turner does argue that a federal regulation, 21 C.F.R. § 1306.05, "defines promptly." However, this contention is inaccurate.  The regulation simply states that a doctor's prescription "shall be dated as of, and signed on, the day when issued." *Id.*  The regulation is "designed to ensure that the doctor examines the patient before delivering the prescription and to ensure that there is a legitimate medical reason for delivering the prescription." *United States v. Joseph*, 709 F.3d 1082, 1090-91 (11th Cir. 2013).  It does not address or define the statutory term "promptly" or address the manner of recording of an oral

---

[8] Turner also argues that the diazepam was "misbranded while held for sale" because the prescription was not "reduced promptly to writing."  21 U.S.C. § 353(b); *see United States v. Arlen*, 947 F.2d 139, 141 n.2 (5th Cir. 1991) ("Any prescription drug that is dispensed without a prescription is deemed 'misbranded' as a matter of law.").  Federal law prohibits "the doing of any . . . act with respect to[] a . . . drug . . . if such act is done while such [drug] is held for sale . . . after shipment in interstate commerce and results in such [drug] being . . . misbranded."  21 U.S.C. § 331(k); *see also* 21 U.S.C. § 333(a) (providing criminal penalties for violations of section 331).  Turner's "misbranding" argument fails for the same reasons as the argument discussed in the text.

Finally, on appeal, Turner alleges that Town Pharmacy violated 21 U.S.C. § 842(a)(5) by failing to keep certain records.  *See* 21 U.S.C. § 842(c)(2)(A) (providing for criminal penalties if an indictment specifically alleges and the trier of fact specifically finds "that the violation was committed knowingly").  However, Turner failed to raise this issue or mention this statutory provision in the circuit court.  Therefore, the issue is waived.  *See, e.g.*, *Methodist Hosps. of Memphis v. Guardianship of Marsh*, 518 So. 2d 1227, 1228 (Miss. 1988) ("A trial judge cannot be put in error on a matter which was never presented to him for decision."); *Adams v. Bd. of Supervisors of Union Cnty.*, 177 Miss. 403, 170 So. 684, 685 (1936) ("It is a long-established rule in this state that a question not raised in the trial court will not be considered on appeal.").

prescription. A different regulation tracks the statute by providing that an oral prescription shall be "promptly reduced to writing." 21 C.F.R. § 1306.21. Like the statute, that regulation does not define the term "promptly."

¶24. As the circuit court noted, Turner provided little evidence regarding the alleged criminal act that forms the basis for her *McArn* claim. Viewed in the light most favorable to Turner, the evidence suggests that Segura dispensed medicine pursuant to an oral prescription from a physician and that the prescription was reduced to writing by the next business day. Turner has provided no evidence or authority that a delay of such duration is a crime. In short, Turner failed to "state with specificity the allegedly illegal conduct, point to evidence of record to support his allegations, and describe how that conduct violated a criminal statute." *White*, 190 So. 3d at 883 (¶16). Accordingly, the circuit court properly granted summary judgment in favor of Town Pharmacy.

## CONCLUSION

¶25. Town Pharmacy was entitled to summary judgment because Turner failed to produce sufficient evidence for a reasonable juror to find that a crime was committed. Because Turner's claim fails for this threshold reason, it is unnecessary to address the additional grounds on which the circuit court granted summary judgment.

¶26. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, LAWRENCE AND McCARTY, JJ., CONCUR. McDONALD, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**